The plaintiff appeals from a summary judgment entered in favor of BE K Construction Company ("BE K"), the defendant, in an action alleging sexual harassment. Rebecca Potts, an employee of BE K, alleged that she was subjected to sexual harassment by Chris Sanders, another employee of BE K. She sued Sanders and BE K on April 10, 1991, alleging that Sanders, individually and/or as agent of BE K, committed assaults and batteries upon her, invaded her privacy, and committed the tort of outrageous conduct against her. She alleged also that BE K, in addition to being vicariously liable for Sanders's conduct, had negligently or wantonly hired and/or supervised Sanders. BE K moved for a summary judgment on September 3, 1991, alleging that Sanders was not its agent and was not acting within the scope of his duties when he committed the acts alleged; also, BE K denied knowing about any risk posed by Sanders and asserted that it had taken remedial action when notified by Potts. The trial court granted BE K's motion.
The single issue on appeal is whether Potts submitted substantial evidence that BE K had ratified Sanders's conduct.
A summary judgment is appropriate upon a showing that no genuine issue of material fact exists and that the moving party is entitled to a judgment as a matter of law. Rule 56, A.R.Civ.P. In reviewing a summary judgment, this Court will view the evidence in a light most favorable to the nonmovant and will resolve all reasonable doubts against the movant.Fincher v. Robinson Bros. Lincoln-Mercury, Inc., 583 So.2d 256
(Ala. 1991). This action was filed on April 10, 1991; therefore, the applicable standard of review is the "substantial evidence rule." See § 12-21-12, Ala. Code 1975. "[S]ubstantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida,547 So.2d 870, 871 (Ala. 1989).
Potts began to work at BE K Construction Company on June 4, 1990. She was assigned to work in the tool room[1] with Sanders. Potts alleges that from the time she began to work at BE K, Sanders unremittingly harassed her sexually. She alleges that Sanders repeatedly touched her in a sexual and offensive manner; that Sanders made lewd comments to her; that Sanders repeatedly asked her to perform sex acts with him; and that Sanders asked her questions regarding her sexual habits and activities. We note now that whether Sanders's conduct constituted battery, invasion of privacy, and/or outrageous conduct is not at issue on this appeal. We assume, for purposes of this appeal only, that Sanders's conduct was sufficient to constitute those torts.
Potts presented evidence that on June 26, 1990, she was approached by Randy Bynum, BE K's office manager, who stated that he had heard from another BE K *Page 400 
supervisor, Rufus Byce,[2] that she was having trouble with Sanders. Potts alleged that Bynum accurately described Sanders's conduct to her and that she confirmed that Sanders had been harassing her. Potts alleged also that at this meeting she told Bynum of other incidents involving Sanders's harassing conduct. She alleges that Bynum told her that he would fire Sanders if the harassing conduct continued. Bynum stated in his affidavit: "I advised [Sanders] that if I received any further complaints of this nature, I would investigate the matter further and if I found any truth to the allegations, then I would take disciplinary actions." He also stated that he told Potts to report any further complaints regarding Sanders.
After meeting with Potts, Bynum had a discussion with Sanders regarding his conduct. Bynum testified that Sanders denied the allegation and stated that he and Potts had been "playing." Bynum testified that he warned Sanders to stop any harassing behavior. After this meeting Sanders and Potts continued to work without supervision in the tool room. Potts alleges that the sexually harassing conduct continued and that Sanders was undeterred by the meeting with Bynum. Potts says that the tortious conduct continued for approximately two weeks until she complained to Byce.
Potts alleges that no disciplinary action was taken to stop the harassing conduct until she complained to Byce. At that time, Sanders was suspended for two weeks without pay and Potts was moved from the tool room to a clerical position.
"For [an employer] to become liable for [the] intentional torts of its agent, the plaintiff must offer evidence that [1] the agent's wrongful acts were in the line and scope of his employment; or [2] that the acts were in furtherance of the business of [the employer]; or [3] that [the employer] participated in, authorized, or ratified the wrongful acts."Joyner v. AAA Cooper Transportation, 477 So.2d 364, 365 (Ala. 1985). The employer is vicariously liable for acts of its employee that were done for the employer's benefit, i.e., acts done in the line and scope of employment or for acts done for the furtherance of the employer's interest. The employer is directly liable for its own conduct if it authorizes or participates in the employee's acts or ratifies the employee's conduct after it learns of the action.
Potts argues that BE K is liable for Sanders's conduct because, she says, it ratified the conduct after it learned of it. Therefore, we make no determination as to whether Sanders made his alleged sexually harassing remarks and gestures to Potts in the line and scope of his employment so as to subject BE K to vicarious liability.
In order to show that BE K ratified Sanders's conduct, Potts must show that BE K either expressly adopted Sanders's behavior or that it implicitly approved of it. An employer's failure to stop the tortious conduct after it learns of the conduct will support an inference that the employer tolerated the conduct. Busby v. Truswal Systems Corp., 551 So.2d 322, 327
(Ala. 1989). Although this Court has not established explicitly what must be shown to prove that an employer has implicitly "ratified" or "tolerated" one employee's sexual harassment of another employee, we now hold that in addition to proving the underlying tortious conduct of an offending employee, a complaining employee must show that the employer (1) had actual knowledge of the tortious conduct of the offending employee and that the tortious conduct was directed at and visited upon the complaining employee; (2) that based upon this knowledge, the employer knew, or should have known, that such conduct constituted sexual harassment and/or a continuing tort; and (3) that the employer failed to take "adequate" steps to remedy the situation.
For purposes of this appeal we assume that Sanders's conduct was tortious; that BE K had knowledge of the conduct; and that BE K knew, or should have *Page 401 
known, that such conduct constituted sexual harassment and/or a continuing tort.
Therefore, our discussion is narrowed to the question of whether BE K took "adequate" steps to remedy the situation after it learned of the conduct. According to Busby, 89149483supra, an employer's "failure to take effective action causing [its employee] to stop that conduct could be found to constitute a ratification of [the employee's] alleged invasion of privacy." Busby, 551 So.2d at 327. Thus, if the steps taken to remedy the situation are not reasonably calculated to halt the harassment, the steps taken by the employer are not "adequate." Id.
In Joyner v. AAA Cooper Transportation, 477 So.2d 364 (Ala. 1985), three employees of AAA Cooper sued their employer for the intentional torts of the offending employee. The offending employee, as the complaining employees testified, had forced or attempted to force the complaining employees to engage in homosexual acts. This Court upheld the directed verdict in favor of the employer because the evidence did not show that the employer had ratified the offending employee's actions. The evidence showed that the employer had taken swift action to investigate the conduct after the first and only report of the conduct was made. The evidence also showed that the employer told the offending employee that if another complaint came to its attention, the offending employee would be laid off. The employer then told the employee who reported the incident that an incident of that nature would not occur again, and that employee testified that the conduct had not recurred thereafter. This Court held that the "conduct of [the employer], when confronted with this complaint, can certainly not be characterized as ratification of [the offending employee's] activities." Id. We agree with the proposition that if the undisputed evidence shows that the employer, as soon as it was practical to do so after learning of the conduct, took steps to stop the tortious conduct and the tortious conductstopped, the steps taken by the employer were adequate, as a matter of law.
Conversely, evidence that an employer, after learning of the tortious conduct, failed to stop the tortious conduct of the offending employee presents a question of fact, unique under the circumstances of each case, as to whether the steps taken to stop the conduct were adequate. Therefore, in this case, the question is whether Potts presented substantial evidence that the steps taken by BE K, after learning of the continuous tortious conduct of Sanders, were not reasonably calculated to stop that conduct. The evidence shows that BE K had detailed knowledge of the tortious conduct before Bynum approached Potts. The record also shows that the action taken by BE K in response to this knowledge was to meet with Potts and Sanders separately. No disciplinary action was taken at that time and BE K did not further monitor or supervise the situation in the tool room. Potts reported further incidents of tortious behavior approximately two weeks later. At that time, action was finally taken to stop the sexually harassing behavior. Sanders was suspended for two weeks and Potts was moved from the tool room to a clerical position.
BE K contends that it took action as soon as it was practical to do so and that the disciplinary measures were adequate. Whether the disciplinary action taken by BE K was adequate to stop Sanders from harassing Potts or other female employees of BE K is a question of fact. The effect of the length of time between when BE K got knowledge of the conduct and when it took disciplinary action is for the jury to consider, and so is the severity of the disciplinary action as compared to the seriousness of the conduct. BE K had knowledge of the allegedly outrageous conduct of Sanders toward Potts and chose not to investigate any further than meeting with Potts and Sanders, although there is evidence that third parties had witnessed the tortious conduct. BE K also chose to return Potts to the tool room with Sanders after this meeting. There is no indication that BE K monitored the situation further or took any steps at that time to see that Sanders did not repeat the sexually harassing conduct. *Page 402 
A jury could find that, faced with knowledge of the conduct allegedly being perpetrated by Sanders, BE K should have acted with greater force and seriousness than it did, and that its failure to take stronger action constituted implicit ratification of Sanders's conduct by allowing the conduct to continue. Of course, a jury could also find that under the circumstances, including BE K's purported lack of knowledge of any past propensity toward this sort of conduct, the action taken by BE K was reasonably calculated to be sufficient to halt the harassment. Therefore, we hold that there is a genuine issue of fact as to whether BE K's actions were adequate and, therefore, that there is a genuine issue of fact as to whether BE K "ratified" Sanders's conduct.
The holding of this Court is limited to the facts of this case, and we expressly decline to hold that what constitutes sufficient evidence of ratification by an employer in a case of sexual harassment would be sufficient evidence of ratification in cases involving other intentional torts. Therefore, we reverse the summary judgment entered in favor of BE K and remand the case for proceedings consistent with this opinion.
REVERSED AND REMANDED.
HORNSBY, C.J., and SHORES, HOUSTON and KENNEDY, JJ., concur.
[1] The tool room is apparently a type of tool warehouse for construction projects of BE K.
[2] Throughout the record, the supervisor's name is variously spelled as "Bryce," "Bice," and "Byce." In this opinion, we will refer to the supervisor as "Byce."