Jeanette **KELLEY**, Plaintiff,

v.

Clayton **WORLEY**, Big/Little, Inc., and Certified Systems, Inc., Defendants.

No. Civ.A. 97–A–1255–N.

United States District Court, M.D. Alabama, Northern Division.

Dec. 14, 1998.

James H. Tipler, Andalusia, AL, for Plaintiff.

Michael D. Schoen, Trophy Club, TX, for Defendants.

## MEMORANDUM OPINION

ALBRITTON, Chief Judge.

### I. INTRODUCTION

This case is before the court on a Motion for Summary Judgment filed by Defendants Clayton Worley ("Worley"), Big Little, Inc. ("Big Little") and Certified Systems, Inc. ("CSI") (collectively, "Defendants"), on September 22, 1998 (Doc. # 20).[1] A Response to Defendants' Motion was filed by Plaintiff Jeanette Kelley ("Plaintiff") on October 15, 1998 (Doc. # 25).[2] In ruling upon this Motion, the court also considers Supplemental Briefs filed by the parties on Nov. 13, 1998 (Docs. # 29 and 30).[3]

Plaintiff's First Amended Complaint[4] alleges a federal claim for sexual harassment under Title VII, 42 U.S.C. §§ 2000e et seq. (Count I), invoking the jurisdiction of this court pursuant to 28 U.S.C. § 1331. Plaintiff's First Amended Complaint alleges five (5) additional claims under state law, for invasion of privacy (Count II), intentional infliction of emotional distress (Count III), battery (Count IV), negligent hiring, retention and supervision (Count V), and negligent failure to provide a safe workplace (Count VI). The court has jurisdiction over these supplemental state law claims pursuant to 28 U.S.C. § 1367.

For the reasons to be discussed, Defendants' Motion is due to be granted in part and denied in part.

### II. FACTS

The submissions of the parties establish the following facts:

The disputes in this case arise out of incidents which are alleged to have occurred during Plaintiff's employment as a cashier at the Big Little convenience store in River Falls, Alabama (the "store") from May 10, 1996 until July 1, 1996. See Defs.' Ex. 2, Kelley Depo. at Atts. 1 and 3. Defendant Worley is the manager of the store and was Plaintiff's immediate supervisor during her employment there. See Defs.' Ex. 4, Worley Aff. at ¶ 2; Ex. 2, Kelley Depo. at 58, ll. 5–6.

Defendant Big Little, an Alabama corporation which meets the statutory prerequisites for the applicability of Title VII, 42 U.S.C. §§ 2000e et seq., owns and operates the store where Plaintiff was employed. See Compl. at ¶ 4. Defendant CSI, which also meets the statutory prerequisites for Title VII applicability, is a corporation that served as a staff leasing company for Big Little, supplying personnel to staff and operate Big Little stores. Id. at ¶ 5. Although Plaintiff worked at a Big Little store, she was technically a CSI employee.

When Plaintiff was hired, she received a copy of a handbook entitled "CSI Employee Handbook for Leased Hourly Employees of Big/Little Stores, Inc. (Alabama)" (the "Handbook"). See Defs.' Ex. 2, Kelley Depo. at 53, ll. 1–5. Soon after she was hired, Defendant Worley reviewed the Handbook with her, and Plaintiff took the Handbook home and read it herself. Id. at 175, ll. 3–14. On May 10, 1996, Plaintiff signed an Employee Acknowledgment form, certifying that she received a copy of the Handbook and that she read and understood the information in the Handbook. Id. at 175, l. 15 through 176, l. 1; Defs.' Ex. 4, Worley Aff., at Att. B, "Employee Acknowledgment."

The Handbook contains a section entitled "Prohibited Harassment," which states that CSI maintains a strict policy of prohibiting sexual harassment. See Defs.' Ex. 2, Kelley Depo. at Att. 6. That section also provides the reasons for the policy and the EEOC's

---

1. The Brief in Support of this Motion is referred to as "Defs.' Br." in this Memorandum Opinion.

2. This Response is referred to as "Pl.'s Br." in this Memorandum Opinion.

3. These Supplemental Briefs are referred to as "Defs.' Supp.Br." and "Pl.'s Supp.Br." in this Memorandum Opinion.

4. All references to "Compl." in this Memorandum Opinion are to this First Amended Complaint.

definition of sexual harassment. *See id.* In addition, the section advises any employee who feels that she or he is a victim of sexual harassment to make a report "to a supervisor or manager that you feel comfortable with," or, if the employee does not feel comfortable speaking with a supervisor or manager, to "contact CSI's Human Resources Department at 1–800–878–3157." *See id.* Plaintiff never reported problems with Defendant Worley to any management or corporate personnel, and she never called the toll-free number provided in CSI's Handbook. *See* Defs.' Br., Ex. 2, Kelley Depo. at 169, ll. 1–9 and 180, ll. 13–25.

Plaintiff alleges that during the course of her employment at the store, she was subjected to sexually suggestive and derogatory comments and improper physical contacts by Worley. Compl. at ¶ 11. Plaintiff alleges that sometime in May, while she was working at the cash register counter, Worley made a lewd comment about what he could do to her private parts with his tongue. *See* Defs.' Br., Ex. 2, Kelley Depo. at 134–35. Plaintiff alleges that Defendant Worley, on several occasions, made improper physical contact with her person by putting his hands under her dress and rubbing her legs, breasts and buttocks with his hands. *See* Defs.' Br., Ex. 2, Kelley Depo. at 97, ll. 4–8; 99, ll. 21–24; 134, ll. 2–4; 135, ll. 15–17; 137, ll. 1–6; and 140, l. 2 through 141, l. 8. Plaintiff's reaction to these physical affronts was to shove Worley away. *See id.*

Plaintiff alleges further that on July 1, 1996, Worley demanded that Plaintiff come over to his house that night in order to engage in sexual acts with him, and that when Plaintiff refused to do so, Worley informed her that if she would not come over, then she was fired. Compl. at ¶ 12. At deposition, Plaintiff's testimony regarding her termination is that Worley handed Plaintiff her last check and told her that he wanted to see her, and that he therefore had to let her go, since their dating would be against store policy. *See* Defs.' Br., Ex. 2, Kelley Depo. at 206. Plaintiff's employment was terminated that day by Defendant Worley. Compl. at ¶ 17. Defendants contend that she was fired for "excessive tardiness," "shortages/carelessness," "violation of company pol./proc.," and specifically, for arriving thirty (30) minutes late and engaging in a loud argument with the cashier, who had been unable to leave the store until her arrival, in front of several customers. *See* Defs.' Ex. 2, Kelley Depo. at Att. 3.

### III. *SUMMARY JUDGMENT STANDARD*

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323, 106 S.Ct. 2548. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing, or pointing out to, the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322–24, 106 S.Ct. 2548.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. 2548. To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *Anderson v. Liberty Lobby,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

## IV. *DISCUSSION*

### A. *Title VII (Count I)*

Under Title VII of the Civil Rights Act of 1964, it is an unlawful employment practice for an employer [5] "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex...." 42 U.S.C. § 2000e–2(a)(1). The scope of the prohibition under Title VII is not limited to economic or tangible discrimination. *See Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993).

 Rather, harassment so "severe or pervasive as to alter the conditions of the victim's employment and create an abusive working environment violates Title VII." *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275, 2283, 141 L.Ed.2d 662 (1998) (quoting *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 64, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986) (internal quotation marks omitted)). For a valid claim of hostile environment sexual harassment, the harassing conduct must create both an objectively hostile or abusive environment—one that a reasonable person would find hostile or abusive—and a subjectively hostile or abusive environment—one that the victim subjectively perceives to be abusive. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21–22, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). In determining whether an environment is sufficiently hostile, courts must examine all of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. *Faragher*, —— U.S. at ——, 118 S.Ct. at 2283.

In addition to hostile work environment sexual harassment claims, Title VII permits claims for quid pro quo sexual harassment. According to the Eleventh Circuit, quid pro quo sexual harassment occurs when:

> [t]he employee's reaction to harassment complained of affect[s] tangible aspects of the employee's compensation, terms, conditions, or privileges of employment. The acceptance or rejection of the harassment by an employee must be an express or implied condition to the receipt of a job benefit or the cause of a tangible job detriment in order to create liability under this theory of sexual harassment.

*Henson v. City of Dundee*, 682 F.2d 897, 909 (11th Cir.1982).

Whether a plaintiff proceeds under the theory of hostile environment harassment or quid pro quo harassment, the Supreme Court has given new guidance to assist courts in determining whether an employer can be held liable for acts of sexual harassment committed by a supervisory employee. In *Faragher* and *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998), the Court has moved away from the distinctions between these two theories and focused on vicarious liability. Under *Faragher* and *Ellerth*, the question to be answered in the present case is whether Big Little and CSI (the "corporate Defendants") can be held vicariously liable for Worley's actions in allegedly sexually harassing Plaintiff. According to the Supreme Court:

> An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee. When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence, *see* Fed.Rule.Civ.Proc. 8(c). The defense

---

**5.** Defendant Worley, who does not meet the definition of an "employer" under Title VII, cannot be liable to Plaintiff under this statute. *See Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir.1991) ("The relief granted under Title VII is against the employer, not individual employees whose actions would constitute a violation of the Act.").

comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.... No affirmative defense is available, however, when the supervisor's harassment culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment.

*Faragher,* 524 U.S. at ——–——, 118 S.Ct. at 2292–93, citing *Ellerth,* 524 U.S. at ——, 118 S.Ct. at 2269.

Plaintiff alleges that she was subjected to serious, sexually harassing physical contacts and comments from her immediate supervisor, Defendant Worley, which resulted in an abusive working environment. Plaintiff further alleges that her employment was terminated because she refused to consent to Worley's sexual advances. Worley, for his part, contests Plaintiff's allegations, vehemently denying that any of the alleged incidents occurred.

■ Defendants further contend that Plaintiff has not stated a claim for hostile environment sexual harassment because Plaintiff did not find Defendant Worley's alleged actions subjectively offensive. Defendants base this contention on the facts that Plaintiff did not scream, call for help, or slap Worley, that she said that she was not physically afraid of Worley, and that she "laughed off" his behavior. *See* Defs.' Supp.Br. at 12. Plaintiff, however, did state that she shoved Worley away, which provides evidence from which a reasonable factfinder could conclude that she subjectively found his advances to be offensive.

At this point, the court must view the evidence in the light most favorable to Plaintiff and draw all inferences in her favor. *See Anderson v. Liberty Lobby,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In light of the gravity of the actions alleged and the applicable evidentiary standard for a summary judgment motion, the court finds that Plaintiff has shown, through her own deposition testimony, at least a question of material fact as to whether Defendant Worley subjected her to unwelcome sexual harassment which is actionable under Title VII.

■ According to the Supreme Court, when the harasser is a supervisor, the employer is presumed to be absolutely liable. *See Faragher,* 524 U.S. at ——–——, 118 S.Ct. at 2292–93 ("An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee.") and *Ellerth,* 524 U.S. at ——, 118 S.Ct. at 2270. The next step of this analysis, had no tangible employment action been taken, would be to analyze whether the corporate Defendants could satisfy the elements of the affirmative defense elucidated by the Supreme Court. In this case, however, Plaintiff was discharged, suffering a tangible employment action which she claims was caused by her refusal to accede to Defendant Worley's improper sexual advances. Because Defendant Worley took tangible employment action against Plaintiff, his subordinate, *Faragher*'s affirmative defense is inapplicable. *See Faragher,* 524 U.S. at ——–——, 118 S.Ct. at 2292–93; *Ellerth,* 524 U.S. at ——, 118 S.Ct. at 2269.

In the absence of an affirmative defense, this court finds that Plaintiff has at least shown a material question of fact as to whether the corporate Defendants can be held vicariously liable for Defendant Worley's alleged actions. For these reasons, Defendants' Motion for Summary Judgment regarding Plaintiff's Title VII claims (Count I) is due to be denied.

### B. *State Law Claims*

Plaintiff has brought state law claims for invasion of privacy, intentional infliction of emotional distress (outrageous conduct), and battery against Defendant Worley and the corporate Defendants. Plaintiff seeks to hold Big Little and CSI responsible for these intentional torts of its employee on the basis of respondeat superior. Plaintiff also seeks to hold the corporate Defendants liable for negligent hiring, retention and supervision of Worley and for negligent failure to provide a safe workplace. Defendants have moved for

summary judgment on all state law claims except the battery claim.

### 1. *Invasion of Privacy (Count II)*

Plaintiff alleges that Defendant Worley's acts of sexual harassment invaded her privacy and that the corporate Defendants ratified his actions, subjecting them to liability under the doctrine of respondeat superior. To succeed on a claim alleging invasion of privacy relating to sexual harassment, a plaintiff must show: (1) that the matters intruded into are of a private nature; and (2) that the intrusion would be so offensive or objectionable that a reasonable person subjected to it would experience outrage, mental suffering, shame, or humiliation. *Ex parte Atmore Community Hosp.,* 719 So.2d 1190, 1191 (Ala.1998) (citing *Busby v. Truswal Systems Corp.,* 551 So.2d 322, 323 (Ala.1989)). "While asking a co-employee for a date and making sexual propositions usually do not constitute an invasion of privacy, extensive inquiries into one's sex life or looking up one's skirt may constitute an invasion of privacy." *Id.* (citing *McIsaac v. WZEW–FM Corp.,* 495 So.2d 649, 651 (Ala.1986); *Phillips v. Smalley Maintenance Servs.,* 435 So.2d 705, 709 (Ala.1983); Restatement (Second) of Torts § 652B cmt. c, ex. 7). One may invade another's privacy through either an intrusion upon a physical space or by an invasion of one's "emotional sanctum"; the law prohibits a wrongful intrusion into either of these areas of privacy. *Phillips,* 435 So.2d at 711.

In *Ex parte Atmore Community Hosp.,* the plaintiff presented evidence that the individual, named defendant made several lewd comments and asked her to meet him outside of work hours for other than business purposes. Further, the plaintiff presented evidence that the defendant looked up her skirt on more than one occasion. The Alabama Supreme Court found that these factual assertions constituted substantial evidence that the defendant had committed an invasion of privacy. *Ex parte Atmore Community Hosp.,* 719 So.2d 1190, 1998 WL 321943, at *3.

Plaintiff in this case has alleged five (5) instances of inappropriate, sexually harassing conduct by Defendant Worley over the seven (7) weeks she was employed at the store. *See* Defs.' Br. at Ex. 2, Kelley Depo. at 168, ll. 9–16. While Plaintiff has alleged that Worley made only one lewd comment, Plaintiff has also alleged that Worley committed acts which were more extreme than looking up Plaintiff's skirt. Rather, in the present case, Plaintiff has alleged that Worley engaged in actual, inappropriate physical contact, including putting his hands under Plaintiff's dress.

This court, therefore, cannot say that a reasonable jury could not find that Worley's conduct, if proven, was extreme and outrageous sexual harassment which amounted to an invasion of Plaintiff's privacy under Alabama precedent. For these reasons, Defendants' Motion for Summary Judgment on the invasion of privacy claim (Count II), regarding Defendant Worley's individual liability, is due to be denied.

Plaintiff also seeks to hold the corporate Defendants liable for Worley's alleged invasion of her privacy. Her theory is that the corporate Defendants ratified Worley's actions and that they are, therefore, liable under the doctrine of respondeat superior. Under that doctrine, an employer can be held liable for acts of its employees where the acts were done in the line and scope of employment, the acts were done in furtherance of the employer's interest, or if the employer participated in, authorized, or ratified the wrongful acts. *Potts v. BE & K,* 604 So.2d 398, 400 (Ala.1992).

An employer is liable for the intentional torts of the employee if the employer ratifies the employee's conduct. *Ex parte Atmore Community Hosp.,* 719 So.2d 1190, 1998 WL 321943, at *4 (citing *Potts,* 604 So.2d at 400). In order to show that the corporate Defendants ratified Worley's actions, Plaintiff must show that: (1) the corporate Defendants had actual knowledge of the tortious conduct; (2) based on this knowledge, the corporate Defendants knew the conduct constituted a tort; and (3) the corporate Defendants failed to take adequate steps to remedy the situation. *Id.* Plaintiff, however, has not produced any evidence to show that the corporate Defendants had actual knowledge of Worley's actions. Plaintiff concedes that she never informed either corporate Defendant about Worley's actions, and Plaintiff has not shown that a co-employee or

any other person informed either corporate Defendant about Worley's actions regarding Plaintiff. Plaintiff, therefore, cannot show that the corporate Defendants ratified Worley's actions.

For these reasons, Defendants' Motion for Summary Judgment on the invasion of privacy claim (Count II), regarding liability of the corporate Defendants under the theory of ratification, is due to be granted.

### 2. Intentional Infliction of Emotional Distress (Count III)

 Plaintiff claims that Defendant Worley engaged in conduct which rose to the level of intentional infliction of emotional distress or, in other words, the intentional tort of outrageous conduct. To recover under the tort of outrageous conduct in Alabama, a plaintiff must prove that: (1) the defendant either intended to inflict emotional distress, or knew or should have known that emotional distress was likely to result from its conduct; (2) the defendant's conduct was extreme and outrageous; and (3) the defendant's conduct caused emotional distress so severe that no reasonable person could be expected to endure it. *Jackson v. Alabama Power Co.*, 630 So.2d 439, 440 (Ala.1993) (citing *American Rd. Serv. Co. v. Inmon*, 394 So.2d 361 (Ala. 1980) (adopting the tort of outrageous conduct in Alabama)). In other words, the conduct complained of must be "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *Id.* The tort of outrageous conduct only applies "in the most egregious circumstances." *Thomas v. BSE Indus. Contractors, Inc.*, 624 So.2d 1041, 1044 (Ala.1993). As the Alabama Supreme Court has noted, mere insults, indignations, threats, annoyances, petty oppressions, or other trivialities do not constitute outrageous conduct. *See Portera v. Winn Dixie of Montgomery, Inc.*, 996 F.Supp. 1418, 1434 (M.D.Ala.1998).

In fact, the only category of outrageous conduct which has been recognized by the Alabama Supreme Court that might arguably be applicable in this case is that of "egregious sexual harassment." *See Busby v. Truswal Systems Corp.*, 551 So.2d 322 (Ala. 1989). Defendants argue that the evidence provided by the Plaintiff does not rise to the level of outrageous conduct required by the Alabama Supreme Court and that Plaintiff has not shown that she suffered from extreme emotional distress as a result of Defendant Worley's actions.

The Alabama Supreme Court has made it clear that the tort of outrageous conduct is a limited remedy to be applied in only egregious circumstances. While Worley's conduct may have risen to the requisite level of outrageousness, this court declines to address the outrageous conduct element of Plaintiff's claim. Since both the conduct and the emotional distress which results therefrom must be extreme to make out a claim for outrageous conduct, this court prefers to address the emotional distress element of Plaintiff's claim. Plaintiff has not produced any evidence that she suffered extreme emotional distress. To the contrary, she has stated that she did not seek or receive emotional counseling of any kind, that she had "laughed off" Worley's affronts, and that she can handle herself. *See* Defs.' Br. at Ex. 2, Kelley Depo. at 99, 1. 3; 137, 11. 19–22; and 213, 11. 13–21. Plaintiff also states that as a result of Worley's actions, she became a cold person. *Id.* at 213, 11. 2–6. This, however, is not substantial evidence of the extreme emotional distress required to state a claim under *Inmon.* This court, therefore, finds that Plaintiff has not presented substantial evidence that Worley's conduct caused her to suffer the requisite extreme emotional distress from which a reasonable jury could find a valid claim for intentional infliction of emotional distress under Alabama law. *See Ex parte Mutual Sav. Life Ins. Co.*, 698 So.2d 772, 774 (Ala.1997).

Furthermore, since Plaintiff has failed to provide substantial evidence supporting her claim for intentional infliction of emotional distress against Worley, she cannot sustain that claim against Big Little or CSI. Plaintiff contends that the corporate Defendants are liable under the theory of respondeat superior. This theory, however, assumes that Plaintiff has provided substantial evidence to sustain her claim for intentional infliction of emotional distress against Worley, which this court has found she failed to do. Defendants' Motion for Summary Judgment on

Plaintiff's claim for intentional infliction of emotional distress (Count III) is, therefore, due to be granted.

### 3. *Negligent Hiring, Retention and Supervision (Count V)*

Plaintiff states a claim against the corporate Defendants for their allegedly negligent hiring, supervision, and retention of Defendant Worley. Specifically, Plaintiff complains that the corporate Defendants breached their duty of care to Plaintiff by hiring, retaining, and failing to appropriately supervise a supervisory employee who sexually harassed subordinate employees. The Alabama Supreme Court has stated that in the context of a master and servant relationship, such as that between the corporate Defendants and Worley, "the master is held responsible for the servant's incompetency when notice or knowledge, either actual or presumed, of the incompetency has been brought to the master." *See Mardis v. Robbins Tire & Rubber Co.,* 669 So.2d 885, 889 (Ala.1995). For the master to be held liable for the servant's incompetency, it must be affirmatively shown that had the master exercised due and proper diligence, the master would have learned of the incompetency. *Id.* This may be done by showing specific acts of incompetency and showing that they were brought to the knowledge of the master, or by showing them to be of such a nature, character, and frequency that the master, in the exercise of due care, must have had notice of them. *Id.*

In the present case, Plaintiff has not provided any evidence, let alone substantial evidence, that she or anyone else told Big Little or CSI about Worley's incompetence due to his inappropriate behavior. Thus, in order to proceed on this claim, Plaintiff must present substantial evidence that the corporate Defendants, in the exercise of due and proper diligence, must have had notice of Worley's incompetency because of the nature, character, and frequency of his actions. While the character and nature of Worley's acts alleged are, at the very least, boorish, and could possibly be found outrageous by a reasonable jury, only five (5) of these improper acts are alleged to have ever occurred. This court, therefore, finds that the frequency of the acts alleged here is not enough for the corporate Defendants to be charged with constructive notice of Worley's alleged incompetency. Defendants' Motion for Summary Judgment on Plaintiff's claim of negligent hiring, supervision, and retention (Count V) is due to be granted.

### 4. *Negligent Failure to Provide a Safe Work Place (Count VI)*

Plaintiff claims that Big Little and CSI negligently failed to provide Plaintiff a safe place to work by failing to prevent Worley's sexual harassment. The corporate Defendants, however, contend that they fulfilled their duty of reasonable care to warn the employee of any risk of harm and to acquaint her with any dangerous features of the employment through their provision of an effective anti-harassment policy.

The court notes at the outset that claims for negligent failure to provide a safe workplace have traditionally been brought in the factual context of unsafe machinery or hazardous conditions in the workplace which cause physical injuries to employees. Neither party has pointed this court to a case where a plaintiff has even brought a claim for an unsafe workplace due to sexual harassment. In fact, upon conducting a search, this court could find only one published opinion by an Alabama court that even mentions a claim for failure to provide a safe workplace due to sexual harassment. *See Doe v. Western Restaurants Corp.,* 674 So.2d 561, 563 (Ala.Civ.App.1995) (noting that such a claim had not survived a motion for summary judgment and that the issue had not been raised on appeal). This court is, therefore, uncertain as to whether sexual harassment can qualify as a breach of the employer's duty to maintain a safe workplace under Alabama law.

Assuming, without deciding, that sexual harassment can qualify as a breach of the employer's duty to provide a safe workplace, this court addresses the merits of Plaintiff's claim. Under the common law, an employer has a duty to supply the employee with a reasonably safe place to work. *See Hill v. Metal Reclamation, Inc.,* 348 So.2d 493 (Ala.1977). The employer is held to that degree of care which reasonable and prudent men exercise in their own affairs, or the care and diligence which a man of ordinary care

**1314**

and prudence would exercise for his own protection, or the protection of his property. *Id.* Accordingly, it is the duty of the employer to exercise reasonable care to warn the employee of any risk of harm and to acquaint him with any dangerous features of the equipment, premises, or procedures with which he works. *Id.* This includes the duty to take reasonable steps, when viewed in relation to the degree of the risk, to guard against injury to the employee from that risk. *Id.*

Analogizing sexual harassment to a risk of harm in the workplace or a dangerous feature of employment, as Plaintiff does in stating this claim, the corporate Defendants contend that they fulfilled their duty of reasonable care to warn the employee of any risk of harm and to acquaint her with any dangerous features of the employment through their provision of an effective anti-harassment policy. The corporate Defendants note that the policy was disseminated to employees via the Handbook,[6] that the policy provides the EEOC's definition of sexual harassment, and that the policy provides a toll-free number for employees to call to report harassment.

The court finds the corporate Defendants' analogy persuasive and agrees that, if the presence of sexual harassment in the workplace can qualify as a breach of the employer's duty to maintain a safe workplace, the provision of a reasonable anti-harassment policy satisfies the employer's duty of reasonable care to warn the employee of any risk of harm and to acquaint her with any dangerous features of the employment. Given the corporate Defendants' anti-harassment policy, the court finds that they took reasonable steps, when viewed in relation to the degree of the risk of injury from sexual harassment, to guard against injury to their employees. Defendants' Motion for Summary Judgment on Plaintiff's claim for negligent failure to maintain a safe place to work (Count VI) is due to be granted.

### V. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment will be

granted in part and denied in part. A separate order will be entered in accordance with the terms of this Memorandum Opinion.

---

**6.** Defendants also contend that the policy was posted in plain view in the store. Plaintiff, however, contests this fact and states that she never saw the policy posted in the store.