[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 1, 2012
JOHN LEY
CLERK

No. 11-11546
_____

D.C. Docket No. 1:09-cv-00712-M


CRYSTAL KURTTS,

Plaintiff - Appellant,

versus

CHIROPRACTIC STRATEGIES GROUP, INC.,
MOBILE SPINE & REHAB ON THE LOOP, INC.,
d/b/a/ Bayside Spine & Rehab,

Defendants - Appellees,

D.C. JOHNNIE MORGAN,

Defendant.

_____

Appeal from the United States District Court
for the Southern District of Alabama

_____

(June 1, 2012)

Before WILSON, ANDERSON and HIGGINBOTHAM,* Circuit Judges.

PER CURIAM:

Crystal Kurtts appeals the grant of summary judgment in her employment discrimination suit against Chiropractic Strategies Group, Inc. and Mobile Spine & Rehab on the Loop, Inc. (collectively CSG). Kurtts asserts claims of sexual harassment and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and various tort claims under Alabama law, including assault and battery, invasion of privacy, outrage, and negligent supervision and training. The district court granted summary judgment in favor of CSG on all claims.[1] After reviewing the parties' briefs, the record, and having the benefit of oral argument, we reverse the grant of summary judgment and remand for further proceedings consistent with this opinion.

We review *de novo* a grant of summary judgment, applying the same standard as the district court. *Raney v. Vinson Guard Serv., Inc.*, 120 F.3d 1192, 1196 (11th Cir. 1997). Summary judgment is proper where there are no genuine issues as to any material fact and the movant is entitled to judgment as a matter of

---

* Honorable Patrick E. Higginbotham, United States Circuit Judge for the Fifth Circuit, sitting by designation.

[1] The parties consented to proceeding before the magistrate judge in accordance with 28 U.S.C. § 636(c). The magistrate judge's decisions will be referred to as those of the district court.

law.  Fed. R. Civ. P. 56(a); *Crawford v. City of Fairburn*, 482 F.3d 1305, 1308 (11th Cir. 2007).  Genuine disputes arise from evidence sufficient for a reasonable jury to return a verdict for the non-movant.  *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).  In deciding whether there is a genuine issue of fact, the court must view all of the evidence, and all inferences reasonably drawn from the evidence, in the light most favorable to the non-movant.  *Raney*, 120 F.3d at 1196.  If the non-movant fails to make a sufficient showing as to any essential element of her case for which she has the burden of proof, the moving party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S. Ct. 2548, 2552 (1986).

## I. Background

Because this is an appeal from the grant of summary judgment we take all facts in the light most favorable to Kurtts.  *See Raney*, 120 F.3d at 1196.  In July 2007, CSG hired Kurtts as a receptionist in its Mobile, Alabama office.  Kurtts was one of three employees in the office.  Dr. Johnnie Morgan was Kurtts's supervisor and the only doctor on staff.  The other staff member was Nakisha Odom, a chiropractic assistant.

In early October of 2007, Morgan began sending Kurtts lewd and sexually

suggestive and explicit text messages,[2] and on several occasions made unwelcome physical contact with her. On November 6, 2007, Morgan told Kurtts that she would receive a better work schedule for "small favors." On the afternoon of November 8, 2007, Morgan sent several text messages to Kurtts saying that she was playing hard to get and that he wanted to have intercourse with her in the office when Odom left for the day. That evening, as they were closing up the office, Morgan turned off all of the lights in the office, snuck up on Kurtts, and effectively cornered her in an empty office. Kurtts then screamed, which Odom overheard because she had returned to retrieve her keys. That night Kurtts contacted a former clinic employee for the contact information of the person to whom she should report Morgan's inappropriate conduct.

The next day, November 9, Kurtts called the CSG office in Arlington, Texas and spoke with Clinic Administrator Deborah Gonzales Oviedo to report Morgan's behavior. Kurtts requested that action be taken against Morgan. Oviedo replied that she would bring the claim to the attention of Jennifer Giessner, the controller/secretary at the Arlington Office, and that they would investigate the matter. Kurtts then asked if Morgan would still be at the office because she felt

---

[2] In one instance, Morgan sent sixty-four text messages to Kurtts in the span of two-and-a-half hours.

extremely uncomfortable around him.[3]  Oviedo stated that Morgan would still be at the office and requested that Kurtts forward her the text messages.  Oviedo then called Kurtts back, said she was unsure of what would happen, and asked if Kurtts just wanted to be sent her final paycheck.  Kurtts replied in the affirmative.  After this conversation no one from CSG spoke to Kurtts again.  Through discovery, Kurtts found that Morgan received no other discipline other than being told to "cool off" by the owner of CSG, Dr. Michael Plambeck.

## II. Hostile Work Environment

To establish a *prima facie* case of sexual harassment through the creation of a hostile work environment, the employee must demonstrate: (1) that she belongs to a protected group, (2) that she was subject to unwelcome sexual harassment, (3) that the harassment was based on her sex, (4) that the "harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment," and (5) "a basis for holding the employer liable."  *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 808 (11th Cir. 2010) (en banc).

Here, Kurtts claims that her constructive discharge is the basis for holding

---

[3] Kurtts stated in her deposition that she did not feel comfortable working with Morgan because the November 8 incident had frightened her.

5

CSG liable. In a sexual harassment case based on a constructive discharge, in addition to the elements of sexual harassment, the employee must also show "that the abusive working environment became so intolerable that her resignation qualified as a fitting response." *Pa. State Police v. Suders*, 542 U.S. 129, 134, 124 S. Ct. 2342, 2347 (2004). If the constructive discharge was not precipitated by a supervisor's official act then the employer may assert the *Ellerth/Faragher* affirmative defense. *Id.* at 148, 124 S. Ct. at 2355.[4] Under the *Ellerth/Faragher* affirmative defense, the employer bears the burden to show by a preponderance of the evidence "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Burlington Inds., Inc. v. Ellerth*, 524 U.S. 742, 765, 118 S. Ct. 2257, 2270 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775, 807, 118 S. Ct. 2275, 2293 (1998); *see also*

---

[4] We would like to clarify that a constructive discharge is not automatically a tangible employment action that precludes the assertion of the *Ellerth/Faragher* affirmative defense. *Suders* held that a constructive discharge is only a tangible employment action when it is precipitated by an "official act," and only then is the employer precluded from relying on the *Ellerth/Faragher* affirmative defense. 542 U.S. at 140–41, 124 S. Ct. at 2350–51. When a constructive discharge is not precipitated by an official act then the employer may assert the defense. However, we do not need to decide whether Kurtts's discharge was a tangible employment action in light of our finding that CSG did not carry its burden under the *Ellerth/Faragher* affirmative defense.

*Frederick v. Sprint/United Mgmt. Co.*, 246 F.3d 1305, 1313 (11th Cir. 2001) ("Both elements must be satisfied for the defendant-employer to avoid liability, and the defendant bears the burden of proof on both elements.").

Given the extensive record of Morgan's inappropriate behavior, CSG does not contend that Morgan's actions do not amount to sexual harassment. Rather CSG argues that Kurtts was not constructively discharged and that CSG cannot be held vicariously liable for Morgan's conduct. The district court found that Kurtts had been constructively discharged. The district court then found that CSG was not vicariously liable because CSG proffered sufficient evidence to establish the *Ellerth/Faragher* affirmative defense as a matter of law. We reverse this finding because there are genuine issues of material fact as to whether CSG took reasonable care to correct the harassment.[5]

"The first element of the *Ellerth/Faragher* affirmative defense requires that an employer demonstrate that it took reasonable care both to prevent *and* correct harassment." *Frederick*, 246 F.3d at 1314. "[T]o establish that it took proper action to correct the harassment," an employer must show that "it acted reasonably promptly on [the] complaint when it was given proper notice of [the] allegations."

---

[5] As a result, we do not address whether (1) CSG took reasonable care to prevent harassment at the workplace and (2) CSG provided sufficient evidence that Kurtts failed to take advantage of CSG's reporting procedures.

7

*Id.* We have made it clear that "[a] threshold step in correcting harassment is to determine if any occurred, and that requires an investigation that is reasonable given the circumstances." *Baldwin v. Blue Cross/Blue Shield of Ala.*, 480 F.3d 1287, 1303 (11th Cir. 2007). An employer is not required to "conduct a full-blown, due process, trial-type proceeding in response to complaints of sexual harassment." *Id.* at 1304. Nor must an employer interview every witness deemed critical by the complainant. *See Walton v. Johnson & Johnson Servs.*, 347 F.3d 1272, 1288 (11th Cir. 2003) (per curiam). At a minimum, however, an employer must make it clear that it will investigate the allegations and "arrive at a reasonably fair estimate of [the] truth." *Baldwin*, 480 F.3d at 1304.

In this case, the record contains evidence that Kurtts reported Morgan's behavior to Oviedo and that Oviedo initially indicated to Kurtts that there would be an investigation. There is evidence that when Kurtts expressed concern about continuing to work with Morgan, Oviedo replied that Morgan would remain at the clinic, and Kurtts was not given the option of taking temporary leave. The record also shows that Kurtts forwarded some of Morgan's text messages to Oviedo. After reading them, Oviedo called back to say that "[s]he was unsure what she was going to do" and asked whether Kurtts wanted her last paycheck. The text messages were very explicit. During her deposition, Kurtts testified that she was

8

frightened of Morgan after the November 8 incident and understood Oviedo's statements to mean that CSG would not take her complaint seriously and that nothing would be done. During her deposition, Oviedo could not unequivocally say that she told Kurtts that the matter would be investigated; in fact she could remember very little of the conversation.

An employee complaining of sexual harassment is vested with no legal right to demand removal of the alleged harasser before an investigation has been undertaken by the employer: there is no doctrine of removal, first; investigate, later. It is the employer's responsibility to take immediate and appropriate corrective acts that might be called for after a reasonable investigation. In CSG's view, the record demonstrates that it adequately communicated to Kurtts its intention to investigate the matter and that Kurtts unreasonably left her job before it had the opportunity to look into her complaint. This may be a fair construction of the proffered evidence, and a jury may well reach the same conclusion. We are mindful, however, that at this juncture we must view the evidence, and all reasonable inferences drawn from it, in the light most favorable to Kurtts. "At the summary judgment stage, the court's function is not to weigh the evidence to determine the truth of the matter . . . ." *Raney*, 120 F.3d at 1196. Therefore, we conclude that a reasonable jury could view Kurtts's statement that she did not feel

comfortable working with Morgan as an expression of her fear of working with Morgan *until the matter was investigated* rather than as her resignation from CSG. A jury could plausibly believe Kurtts's testimony that Oviedo indicated that no meaningful action would be taken, and that Oviedo's action gave Kurtts only two options: returning to the status quo or getting her "last paycheck." Thus, a jury could find that CSG did not exercise reasonable care in responding to Kurtts's complaint.

Because CSG bears the burden of proof with respect to each element of the *Ellerth*/*Faragher* affirmative defense, *see Frederick*, 246 F.3d at 1313, and CSG failed to demonstrate that there is no genuine issue of fact as to all of these elements, we must reverse the grant of summary judgment on this claim.

### III. Retaliation

To establish a prima facie case of retaliation under Title VII, a plaintiff must demonstrate that: (1) she engaged in statutorily protected activity; (2) she suffered a materially adverse action; and (3) there was some causal relation between the two. *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1277 (11th Cir. 2008). The district court granted summary judgment in favor of CSG because it found insufficient evidence to support the second element of this claim. On appeal, Kurtts argues that the district court erred because it also found that she was

constructively discharged, which she claims constitutes a materially adverse action. Meanwhile, CSG asserts that because the evidence does not demonstrate a constructive discharge, Kurtts cannot prove that she suffered an adverse employment action.

We begin by noting that the parties have assumed that the definition of an adverse employment action under the anti-retaliation provision of Title VII, 42 U.S.C. § 2000e-3(a), is the same as that for an adverse employment action under the anti-discrimination, or substantive, provision of the statute, § 2000e-2(a). The Supreme Court rejected this view in *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 64, 126 S. Ct. 2405, 2412–13 (2006), and we have recognized that our prior precedent was abrogated by this decision. *See Crawford v. Carroll*, 529 F.3d 961, 973–74 (11th Cir. 2008).

The Supreme Court clarified that "Title VII's substantive provision and its antiretaliation provision are not coterminous." *Burlington*, 548 U.S. at 67, 126 S. Ct. at 2414. To establish a prima facie case of retaliation, a plaintiff is not required to show "an ultimate employment decision or substantial employment action." *Crawford*, 529 F. 3d at 974. It is therefore unnecessary to decide whether a reasonable jury could find that Kurtts was constructively discharged.

The key question is whether the employer's conduct "might have dissuaded

a reasonable worker from making or supporting a charge of discrimination." *Id.* (quoting *Burlington*, 548 U.S. at 68, 126 S. Ct. at 2415). Although this standard does not always reflect the common understanding of the term "retaliation," it is consistent with the central purpose of the anti-retaliation provision—to prohibit "employer actions that are likely to 'deter victims of discrimination from complaining to the EEOC,' the courts, and their employers." *Burlington*, 548 U.S. at 68, 126 S. Ct. at 2415 (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 346, 117 S. Ct. 843, 848 (1997)).

Viewing the evidence in the light most favorable to Kurtts, we conclude that a reasonable jury could find that Kurtts experienced a materially adverse action as defined by the Supreme Court in *Burlington*. A jury crediting Kurtts's account could find that Kurtts complained about the harassment, was immediately told that it was uncertain whether any action would be taken, and that she should instead consider taking her last paycheck. A reasonable jury could conclude that CSG's response "might deter a reasonable employee" from lodging a complaint about harassment. *Crawford*, 529 F.3d at 974.

The district court's grant of summary judgment rested on its view that Kurtts cannot show that there was an adverse action on the part of CSG. CSG urges us to affirm the district court's decision solely on that ground. Because we

agree with Kurtts that there is a genuine issue of fact, we reverse the grant of summary judgment on this claim.

## IV. State-Law Claims

In her complaint, Kurtts asserted a number of claims under Alabama law: assault and battery; invasion of privacy; outrage; and negligent and/or wanton hiring, supervision, training, and retention. The district court granted summary judgment in favor of CSG with respect to all of these claims.

### A. Assault and battery, invasion of privacy, and outrage

CSG does not argue on appeal, and failed to argue in the district court, that the evidence is insufficient to support the finding that Morgan committed these intentional torts. Rather, CSG asserts that the evidence does not provide an adequate basis to hold it vicariously liable for Morgan's conduct.

Alabama law provides that an employer can be held vicariously liable for the intentional torts of its agent if (1) the agent's wrongful acts were in the line and scope of his employment; (2) the acts were in furtherance of the employer's business; or (3) the employer participated in, authorized, or ratified the wrongful acts. *Potts v. BE & K Constr. Co.*, 604 So. 2d 398, 400 (Ala. 1992); *see also E. Ala. Behavioral Med., P.C. v. Chancey*, 883 So. 2d 162, 166, 169 (Ala. 2003). Kurtts only contends that CSG ratified Morgan's conduct.

13

To prove that an employer ratified the wrongful acts of an employee, a plaintiff must show that the employer

> (1) had actual knowledge of the tortious conduct of the offending employee and that the tortious conduct was directed at and visited upon the complaining employee; (2) that based on this knowledge, the employer knew, or should have known, that such conduct constituted sexual harassment . . . ; and (3) that the employer failed to take 'adequate' steps to remedy the situation.

*Potts*, 604 So. 2d at 400. If the steps taken by the employer are not "reasonably calculated to halt the harassment, the steps taken by the employer are not 'adequate.'" *Id.* at 401.

When the proffered evidence is viewed in the light most favorable to Kurtts, it supports the finding that each of these elements are present. First, there is evidence that Kurtts told Oviedo about Morgan's conduct, which was directed at Kurtts, and that, as a result, CSG acquired knowledge of Morgan's behavior. Second, there is evidence that CSG knew or should have known that such conduct constituted sexual harassment. Finally, there is evidence that CSG failed to take adequate steps in response. As noted above, a reasonable jury could find that CSG conveyed to Kurtts that no meaningful action would be taken in response to her complaint and that instead she should take her last paycheck. A reasonable jury could find that these did not constitute "'adequate' steps to remedy the situation."

14

*Id.* at 400. Thus, material questions of fact remain and summary judgment as to Kurtts's claims of intentional torts must be reversed.

### B. *Negligent and/or wanton hiring, supervision, training, and retention*

The district court also granted summary judgment in favor of CSG with respect to Kurtts's claims of negligent and/or wanton hiring, supervision, training, and retention. It did so on the ground that CSG could not be held liable with respect to Kurtts's claims of intentional torts. In other words, the district court assumed that if CSG could not be held vicariously liable for the intentional torts of Morgan, it also could not be held directly liable under claims of negligent and/or wanton hiring, supervision, training, or retention for Morgan's conduct. On appeal, both Kurtts and CSG accept this assumption, asserting that all of the state-law claims rise and fall together.

We observe that if we were to accept this theory, our disposition of Kurtts's claims of intentional torts would require us to reverse the grant of summary judgment as to Kurtts's claims of negligent and/or wanton hiring, supervision, training, and retention. We note, however, that the theory adopted by the district court and by the parties does not accurately reflect Alabama law. The Alabama Supreme Court has held that if there is not enough evidence to support a finding of vicarious liability, an employer may nonetheless be held directly liable for the

15

wrongful act of an employee under a theory of negligent and/or wanton hiring, supervision, training, or retention. *CP & B Enters., Inc. v. Mellert*, 762 So. 2d 356, 362 (Ala. 2000). This holding recognizes the basic distinction between direct liability and vicarious liability.

The line of cases upon which the parties and the district court rely concern the separate situation where there is insufficient evidence to support the finding that the alleged tortfeasor-employee committed a tort. In such cases, the Alabama Supreme Court has explained that an employer may not be held directly liable on a theory of negligent supervision or training because no tort occurred. *Jones Express, Inc. v. Jackson*, ___ So. 3d ___, 2010 WL 3724744, at *5 (Ala. 2010) (per curiam). The situation here is different. As we have observed, CSG has not argued that there is insufficient evidence for a jury to find that Morgan committed the torts of assault and battery, invasion of privacy, or outrage. Thus, the line of cases upon which the parties and the district court have relied is inapposite.

In sum, we conclude that the grant of summary judgment for CSG must be reversed and the case remanded for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**

16

ANDERSON, concurring:

With one observation, I concur in the per curiam opinion. My reading of the record reveals that there is little or no evidence that Kurtts's decision to resign was made before Oviedo asked if she wanted her final paycheck. In any event, there clearly are genuine issues of fact in that regard. A reasonable jury could find that Oviedo's question posed a Hobson's choice and was not a reasonable response to Kurtts's complaint. Thus, I agree that there remain genuine issues of fact as to whether CSG exercised reasonable care in responding to Kurtts's complaint.