773 So.2d 1015 (1999)
SHONEY'S, INC., et al.
v.
Michael L. BARNETT.
Michael L. Barnett
v.
Shoney's, Inc., et al.
2970394.
Court of Civil Appeals of Alabama.
April 30, 1999.
Certiorari Denied August 27, 1999.
*1019 David W. Proctor and Brian R. Bostick of Johnston, Barton, Proctor & Powell, L.L.P., Birmingham, for appellants/cross appellees Shoney's Inc., and TPI Restaurants, Inc.
William T. Mills II, Mark E. King, and W. Perry Webb of Porterfield, Harper & Mills, P.A., Birmingham, for appellant/cross appellee Rebecca Lawrence Hunter.
J. Gusty Yearout, John G. Watts, and D. Dirk Thomas of Yearout, Myers & Traylor, P.C., Birmingham; and Mac Parsons and Jonathan Tindle, Bessemer, for appellee/cross appellant Michael L. Barnett.
Alabama Supreme Court 1981296.

*1020 On Applications for Rehearing

CRAWLEY, Judge.
The opinion of December 11, 1998, is withdrawn and the following is substituted therefor.

I. Procedural History
Michael L. Barnett was the kitchen manager at a Shoney's restaurant operated by TPI, Inc., a restaurant management company, in Bessemer. When the store was burglarized in January 1995, the managers reported the theft and named Barnett as a suspect. Barnett was subsequently arrested and was incarcerated for 32 days. The criminal case against Barnett was submitted to a grand jury after a judge, at a preliminary hearing, found probable cause to indict; that finding of probable cause was based, in part, on the testimony of the executive manager of the restaurant, Rebecca Lawrence Hunter. The grand jury returned an indictment. However, the police detective assigned to the case had significant doubts about the testimony of one of the Shoney's employees and recommended that the case be nolprossed, and it was.
Barnett then sued Hunter, who had sworn out the warrant and had testified at his preliminary hearing; Shoney's, Inc; and TPI, Inc.,[1] alleging negligence, slander, abuse of process, and malicious prosecution. Barnett voluntarily dismissed the slander count at trial. Shoney's and Hunter moved for a judgment as a matter of law on the negligence, malicious prosecution, and abuse of process claims at the close of Barnett's evidence and again at the close of all the evidence. The trial court granted Shoney's and Hunter's motions for a judgment as a matter of law on the negligence claims; however, it denied those motions as to the malicious prosecution and abuse of process claims. The case was then submitted to the jury.
The jury returned a general verdict in favor of Barnett, awarding him $5,500 in compensatory damages and $250,000 in punitive damages. The trial court denied Shoney's and Hunter's motions for new trial, but ordered a remittitur of the punitive damages award to $99,000. Shoney's and Hunter appealed to the Alabama Supreme Court, arguing that they had been entitled to a judgment as a matter of law on both the malicious prosecution claim and the abuse of process claim; that juror misconduct required a reversal; that the trial court erred by excluding evidence of Barnett's conviction for sexual abuse in the second degree; and that the award was excessive. Barnett cross-appealed, arguing that the trial court should not have reduced the punitive damages award. The supreme court transferred the case to this court pursuant to Ala.Code 1975, § 12-2-7(6).
II. Standard of Review
"[I]n reviewing the trial court's ruling on [a] motion [for a judgment as a matter of law], we review the evidence in a light most favorable to the nonmovant, Ritch v. Waldrop, 428 So.2d 1 (Ala. 1982), and we determine whether the party with the burden of proof has produced sufficient evidence to require a jury determination. Macon County Comm'n v. Sanders, 555 So.2d 1054 (Ala.1990).
". . . .
"... In ruling on a motion for [a judgment as a matter of law], the trial court is called upon to determine whether the evidence was sufficient to submit a question of fact to the jury; for the court to determine that it was, there must have been `substantial evidence' before the jury to create a question of fact. See, § 12-21-12(a), Ala.Code 1975. `[S]ubstantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' *1021 West v. Founders Life Assur. Co. of Florida, 547 So.2d 870, 871 (Ala.1989)."
American Nat'l Fire Ins. Co. v. Hughes, 624 So.2d 1362, 1366-67 (Ala.1993). "`[O]nly where there is a complete absence of proof on a material issue or where there are no controverted issues of fact on which reasonable people could differ'" should a judgment as a matter of law be granted. Alpine Bay Resorts, Inc. v. Wyatt, 539 So.2d 160, 162 (Ala.1988) (quoting Deaton, Inc. v. Burroughs, 456 So.2d 771 (Ala. 1984)).
This case involves multiple theories of liability and multiple defendants. This court must consider whether the jury's verdict would be referable to a "good" count, or whether, if any of Barnett's claims are "bad," the judgment would have to be reversed and the case remanded for a new trial on the remaining "good" counts. To make that determination, we must review the motions for a judgment as a matter of law made by Hunter and Shoney's.
"In a multiple-theory case, ... if the [motion for a judgment as a matter of law] is addressed to one or more of the theories, separately and severally, specifying as a ground that the evidence is insufficient as to each theory so challenged, then the jury's general verdict is due to be sustained on a timely filed post-judgment motion for a [judgment as a matter of law], specifying the same ground, only if each of the challenged theories is supported by the evidence. If one or more of the challenged theories is not supported by the evidence, the movant is entitled to a [judgment as a matter of law] on the unsupported theory or theories and to a new trial on the remaining theories; in this event, the verdict is not referable to the `good' theory."
King Mines Resort, Inc. v. Malachi Mining & Minerals, Inc., 518 So.2d 714, 716 (Ala.1987) (citation omitted).
After reviewing the motions for a judgment as a matter of law, we are convinced that those motions raised a question of the sufficiency of the evidence as to all of Barnett's claims. Therefore, if Hunter or Shoney's was entitled to a judgment as a matter of law on any of Barnett's claims, then the judgment must be reversed as to those claims and the case remanded for a new trial on any remaining claims.

III. Facts
Many of the facts of this case are disputed. Barnett's last day of work was Saturday, January 14, 1995. According to Barnett, he resigned his position that evening by giving the other manager working that evening, Sylvia Wilkerson, a letter of resignation and his keys. Barnett testified that he quit his job because of transportation problems; he lived in Tuscaloosa and did not have reliable transportation. He said that he accepted a ride back to Tuscaloosa with a frequent customer, Allen Bennett. Barnett testified that he returned to Shoney's on January 20, to pick up his last paycheck; he said he spoke with Hunter, but that she did not give him his check. He also said he was told that he would need to contact Steve Brown at the corporate headquarters in Nashville to get his check because "some things were missing." He testified that Hunter did not tell him about the theft or that he was a suspect.
Wilkerson testified that Barnett had given her his letter of resignation and his set of keys on January 14; she said she placed both in the store safe. She also testified that she spoke with Hunter, the store's executive manager; she said that she told Hunter that Barnett had resigned, read the letter of resignation to Hunter over the telephone, and placed the letter back in the safe. She said that she then closed up the store for the night and went home. She testified that she came to work around 3:00 p.m. on Sunday, January 15. According to Wilkerson, she saw a policeman in the office and Hunter "made a gesture to me as [if] I hadn't seen any keys." Wilkerson says she never spoke to the area manager, Don Davis, about the theft or *1022 about Barnett's resignation and that no one asked her any questions about the night before. Wilkerson admitted that she later became aware that Barnett was suspected of the theft, but she said that she never attempted to contact Barnett, never mentioned to Hunter or the police that Barnett had resigned and given her his keys, and never attempted to contact Davis about Barnett's resignation.
Hunter testified that the morning manager, Cathy Anderson, told her that when she arrived at the store on Sunday, January 15, she found the safe open, discovered money and frozen food missing, and found the back door open with a set of manager's keys in the lock. Hunter also testified that she telephoned the area manager, Don Davis, after speaking to Anderson about the theft. She said that Davis instructed her to meet him at the store. She also testified that she had not spoken to Wilkerson or Barnett the night before about his alleged resignation, and she denied that Wilkerson had read a letter of resignation to her over the telephone.
Davis testified that, after speaking with Hunter, he telephoned the regional director, Mike Johnson, and that Johnson instructed him to telephone TPI's in-house counsel, Steve Brown. Davis also testified that he met Hunter and Anderson at the store, and spoke there with both of them about what had occurred. According to Davis, both told him essentially the same story: that Anderson had opened the store to find the safe open, money and frozen food missing, and a set of manager's keys in the lock of the back door. He also said that he was told that the keys in the door were the set that belonged to Barnett. Davis said he asked how Anderson and Hunter knew that the keys in the door were Barnett's; he said he was told by both of them that the keys belonged to Barnett, the kitchen manager, because his set of keys was missing one particular key that operated the cash register, known as the "M101 key." Davis testified that he telephoned the police to report the theft and that he called Brown with this information. He said that Brown instructed him to have a warrant issued for Barnett. Davis said that he authorized Hunter to swear out a warrant for Barnett. He testified that he also spoke with Sylvia Wilkerson when she arrived at work, and he said she told him nothing of Barnett's alleged resignation the evening before.

IV. The Claims Against Hunter
Barnett sued Hunter in her individual capacity, alleging malicious prosecution and abuse of process. The jury returned a general verdict in Barnett's favor. Hunter argues that the trial court should have entered a judgment as a matter of law on both counts because, she says, Barnett failed to establish the requisite elements of those counts.

A. Malicious Prosecution
The elements of malicious prosecution are well settled. As plaintiff, Barnett was required to prove that Hunter initiated judicial proceedings against him, without probable cause and with malice, and that those proceedings terminated in his favor, yet caused him damage. Fina Oil & Chemical Co. v. Hood, 621 So.2d 253, 256 (Ala.1993). Hunter concedes that the proceedings terminated in Barnett's favor and that Barnett incurred damage. She argues that Barnett failed, however, to prove two of the elements of malicious prosecution: that she instituted the action against him and that she did not have probable cause to do so. We disagree.

1. Initiation of the Action
Hunter argues that, because Shoney's was the "victim" of the alleged burglary and that she signed the warrant only at the instruction of her superiors, she did not initiate the action against Barnett. She also argues that the State of Alabama was the true initiator of the action against Barnett and that the Bessemer Police Department investigated the crime, thereby preventing her from assuming the role of *1023 initiator. On both arguments, Hunter fails.
Malicious prosecution actions are disfavored in the law for the very reason that "`anyone who has reasonable cause to believe that there is reasonable cause for legal redress and protection has a lawful right to seek such redress without risk of being sued and having to respond in damages for seeking successfully to enforce his rights.'" Alabama Power Co. v. Neighbors, 402 So.2d 958, 962 (Ala.1981) (quoting Birwood Paper Co. v. Damsky, 285 Ala. 127, 229 So.2d 514 (1969)). Hunter is correct in arguing that
"[i]f a defendant [in a malicious prosecution action] merely gives the district attorney's office information regarding an alleged crime, leaving the decision to prosecute entirely to the uncontrolled discretion of the district attorney, who thereafter makes his own independent investigation and thereupon takes the information to the grand jury which returns indictments against the suspects, the defendant ... is not regarded as having instigated the criminal proceeding."
Neighbors, 402 So.2d at 962.
However, giving information to the district attorney's office shields the malicious prosecution defendant only if she "`states all the material facts bearing thereon within [her] knowledge'" and if "`the finding and return of the indictment [is] not ... induced by fraud, subornation of witnesses, suppression of testimony, or other like misconduct on the part of the defendant.'" Id. at 962 and 963 (quoting American Surety Co. v. Pryor, 217 Ala. 244, 247, 115 So. 176, 179 (1927) (emphasis added in Neighbors)). Likewise, giving information concerning a possible crime to the police is not initiating an action "`unless such information was a misrepresentation of the facts in order to induce action, or there was a suppression of known material facts.'" Id. at 964 (quoting Dismukes v. Trivers Clothing Co., 221 Ala. 29, 32, 127 So. 188, 190 (1930)) (emphasis added). In short, if one "corruptly or oppressively brings about the indictment or prosecution of another maliciously and without probable cause ... by [method of] fraud, perjury, subornation, or by the willful suppression of known material facts, the intentional thwarting of a fair investigation," id. at 965, she is the initiator of the judicial proceeding against the malicious prosecution plaintiff.
The facts concerning the events of the night of January 14, 1995, are in sharp dispute. Barnett said that he resigned and turned in his keys that evening. Wilkerson's version of the evening's events is essentially the same as Barnett's; she said that she locked his keys in the safe after he resigned. She also testified that she reported Barnett's resignation to Hunter, that she read the resignation letter to Hunter over the telephone, and that she told Hunter that Barnett's keys were locked in the safe. Hunter denies any knowledge of Barnett's alleged resignation the night before the burglary and she denies that she was told that his keys were locked in the safe. If the police had been told that Barnett's keys had been locked in the safe the night before the burglary, they would likely have focused their attention on someone other than Barnett or at least would have been more cautious in deciding to prosecute Barnett. The conflicting testimony in this case raises the question whether Hunter told the police all the material facts concerning the theft and Barnett's possible involvement. Such a conflict in the evidence raises a question whether Hunter "suppress[ed] ... known material facts." That question of fact is sufficient reason to submit to the jury the question whether Hunter initiated the criminal proceeding. See Hughes, 624 So.2d at 1366-67.

2. Probable Cause
Hunter argues that the investigation of the burglary by Detective William Byess of the Bessemer Police Department, *1024 the district attorney's determination to issue a warrant, the judge's determination at Barnett's preliminary hearing that probable cause existed, and Barnett's indictment by the grand jury prove that probable cause existed in this case. Thus, she concludes, there was probable cause to arrest and charge Barnett with the burglary and Barnett failed to present substantial evidence that she initiated the proceedings against him without probable cause. We disagree.
Probable cause has been defined as "`such a state of facts in the mind of the prosecutor as would lead a man of ordinary caution and prudence to believe or entertain an honest and strong suspicion that the person arrested is guilty.'" S.S. Kresge Co. v. Ruby, 348 So.2d 484, 488 (Ala.1977) (quoting Birwood Paper Co. v. Damsky, 285 Ala. 127, 134, 229 So.2d 514, 521 (1969)). "The question in an action for malicious prosecution arising from a criminal charge is whether the [malicious prosecution] defendant, at the time ... she instituted the proceeding, had probable cause to believe that the accused was guilty." Ruby, 348 So.2d at 488. There-fore, the question is whether Hunter had cause to believe, based upon what she saw at the store after the burglary and what she knew from any conversations she might have had the night before, that Barnett was guilty of burglarizing the store.
As Hunter correctly notes, the general rule is that a grand jury indictment is itself prima facie evidence of the existence of probable cause.[2]National Sec. Fire & Cas. Co. v. Bowen, 447 So.2d 133, 140 (Ala.1983). However, the indictment must not have been "induced by fraud, subornation, suppression of testimony, or other like misconduct of the party seeking the indictment." Bowen, 447 So.2d at 140; see also Neighbors, 402 So.2d at 963. As discussed above, the facts concerning Hunter's knowledge of Barnett's alleged resignation and the location of his keys were disputed. "Where the material facts are disputed, the issue of probable cause must go to the jury." Ruby, 348 So.2d at 488. The conflicting testimony of Hunter and Barnett and Wilkerson warrants submission of the question of probable cause to the jury. This case is not one "`where there are no controverted issues of fact on which reasonable people could differ,'" Alpine Bay Resorts, Inc. v. Wyatt, 539 So.2d 160, 162 (Ala.1988) (quoting Deaton, Inc. v. Burroughs, 456 So.2d 771 (Ala.1984)); the trial court properly denied the motions for a judgment as a matter of law on the malicious prosecution claim against Hunter.

B. Abuse of Process
Hunter also argues that Barnett failed to present sufficient evidence of the elements of abuse of process. Therefore, she concludes, that claim should not have been presented to the jury. After considering the elements of the tort of abuse of process, its distinction from the tort of malicious prosecution, and the evidence presented in this case, we agree that the abuse of process claim should not have been submitted to the jury.
The tort of abuse of process has been discussed recently by our supreme court. See C.C. & J., Inc. v. Hagood, 711 So.2d 947 (Ala.1998). The elements are (1) the existence of an ulterior purpose; (2) the wrongful use of process; and (3) malice. Hagood, 711 So.2d at 950. The tort of abuse of process differs from the tort of malicious prosecution; the tort of abuse of process is concerned with "the wrongful use of process after it has been issued," while the tort of malicious prosecution is concerned with "the wrongful issuance of process." Id.

1. Ulterior Purpose
The first element of the tort of abuse of process is the existence of an *1025 ulterior purpose. Abuse of process has been defined as "the malicious perversion of a regularly issued process to accomplish a purpose whereby a result not lawfully or properly obtainable under it is secured." Duncan v. Kent, 370 So.2d 288, 290 (Ala. 1979). As our supreme court has explained, a defendant cannot be liable for the tort of abuse of process "`[i]f the action is confined to its regular and legitimate function in relation to the cause of action stated in the complaint.'" Duncan, 370 So.2d at 290 (quoting 1 Am.Jur.2d Abuse of Process, § 13 (1962)). However, liability attaches "`if the suit is brought, not to recover on the cause of action stated in the complaint, but for a collateral purpose.'" Id. For example, if a creditor, who was legally entitled to garnish a debtor's wages, garnished the debtor's exempt wages solely for the purpose of coercing the debtor to pay the entire debt, the creditor would be liable for abuse of process. See Dickerson v. Schwabacher, 177 Ala. 371, 376, 58 So. 986, 988 (1912) (giving this hypothetical in a discussion of the tort of abuse of process). "Thus, if a defendant prosecutes an innocent plaintiff for a crime without reasonable grounds to believe him guilty, it is malicious prosecution; if he prosecutes him with such grounds to extort payment of a debt, it is abuse of process." William L. Prosser, Handbook of the Law of Torts, § 121, at 857 (4th ed.1971).
Hunter argues that Barnett produced no evidence that she had an ulterior purpose in swearing out the warrant against him. Indeed, from all that appears in the testimony at trial, Hunter's only purpose in pursuing a criminal prosecution against Barnett was the legitimate end of prosecuting someone for the burglary of the restaurant. Barnett produced no evidence to the contrary.

2. Wrongful Use of Process
In an abuse of process case, the plaintiff must also prove that the defendant wrongfully used process to achieve the intended ulterior purpose.
"`[T]here is no liability where the defendant has done nothing other than carry out the process to its authorized conclusion, even though with bad intentions.... [I]t is what is done in the course of negotiation, rather than the issuance or any formal use of the process itself, which constitutes the tort.'"
Hagood, 711 So.2d at 951 (quoting W. Page Keeton et al., Prosser and Keeton on Torts, § 121, at 898 (5th ed.1984)). As the supreme court explained, the plaintiff in an abuse of process case must prove that the defendant "somehow acted outside the boundaries of legitimate procedure after the [initiation of the proceeding]." Id. The supreme court discussed the interplay of ulterior motive and wrongful use of process: "`[T]he [ulterior purpose] must culminate in an actual abuse of the process by perverting it to a use to obtain a result which the process was not intended by law to effect....'" Dempsey v. Denman, 442 So.2d 63, 65 (Ala.1983) (quoting 72 C.J.S. Process § 120, at 1190-91 (1951)).
Barnett argues that Hunter's testimony at the preliminary hearing, which he contends was perjured, amounted to wrongful use of process; we disagree. A wrongful use of process is quite simply the use of a lawful process for a purpose for which it was not designed. See Dempsey, 442 So.2d at 65. Barnett was required to prove that Hunter did something other that "`carry out the process to its authorized conclusion.'" Hagood, 711 So.2d at 951 (citation omitted). As discussed above, prosecuting someone for a crime without probable cause is malicious prosecution, not abuse of process. See Prosser, supra, § 121, at 857. It is the use of the process for something other that its intended result, for example, to extort payment for a debt, that results in liability for abuse of process. Id.

3. Malice
The final element of the tort of abuse of process is malice. When attempting to determine whether a plaintiff has *1026 proven malice in an abuse of process case, the focus is "not [on whether the defendant holds] ill will [against the plaintiff], or [is acting out of] spite, but rather, [whether] the [defendant] employ[ed] the process... for an end not germane thereto, for achievement of a benefit totally extraneous to or of a result not within its legitimate scope[.]" Stuart M. Speiser et al., The American Law of Torts, § 28:34, at 218 (1991). Once the plaintiff establishes an ulterior purpose and a wrongful use of process, "malice is made to appear in the eyes of the law." Clikos v. Long, 231 Ala. 424, 428, 165 So. 394, 397 (1936).
Barnett also argues that he produced sufficient evidence of malice. However, despite his argument that "it is certainly logical and reasonable to presume that if [Hunter] ha[d] no probable cause ... [yet she] persist[ed] in having [Barnett] arrested and incarcerated, this must be from malice," malice in an abuse of process case involves not ill will or meanness, but the goal of achieving some result not properly achieved by the process undertaken. See Speiser, supra, § 28:34, at 218; see also Clikos, 231 Ala. at 428, 165 So. at 397.

4. Summary
Despite Barnett's argument that he produced sufficient evidence of each element of abuse of process and that the trial court properly submitted the claim to the jury, our review of the elements of abuse of process and the evidence presented at trial indicates otherwise. The evidence does not support the trial court's decision to submit this claim to the jury. Without evidence of any element of his abuse of process claim, Barnett's abuse of process claim fails. Hunter was entitled to a judgment as a matter of law on the abuse of process claim.

V. Malice and the Punitive Damages Award
Hunter argues that we should reverse the trial court's denial of the motion for a judgment as a matter of law on the issue of punitive damages. She argues that, before punitive damages may be awarded, malice must be proven by clear and convincing evidence. See Ala.Code 1975, § 6-11-20(a). Hunter contends that the only evidence of malice presented at trial was the inference of malice afforded by the lack of probable cause; this, she argues, is not clear and convincing evidence. We disagree.
Section 6-11-20(a) reads, in part: "Punitive damages may not be awarded in any civil action, ... other than in a tort action where it is proven by clear and convincing evidence that the defendant consciously or deliberately engaged in oppression, fraud, wantonness, or malice in regard to the plaintiff." (Emphasis added.) Malice, as used in § 6-11-20(a), is defined as "[t]he intentional doing of a wrongful act without just cause or excuse, either: a. [w]ith an intent to injure the person or the property of another person or entity, or b. [u]nder such circumstances that the law will imply an evil intent." § 6-11-20(b)(2).
Hunter bases her argument that Barnett failed to present clear and convincing evidence of malice on the fact that Barnett testified that he knew of no motive for Hunter's lying about his resignation and on the fact that Hunter herself denied any ill will between her and Barnett. Apparently, Hunter believes that malice is typified by ill will or by a desire for revenge. However, neither of those is essential to prove malice. S.S. Kresge Co. v. Ruby, 348 So.2d 484, 489 (Ala.1977). "Whatever is done willfully and purposely, whether the motive be to injure the accused, to gain some advantage to the prosecutor, or through mere wantonness or carelessness, if at the same time wrong and unlawful within the knowledge of the actor, is within legal contemplation maliciously done." Ruby, 348 So.2d at 489.
In a malicious prosecution action, malice may be inferred from the lack of probable cause. Id. In addition, "inducing an indictment by procuring and giving false evidence before a grand jury shows a malicious motive." National Sec. Fire & *1027 Cas. Co. v. Bowen, 447 So.2d 133, 140 (Ala.1983). Under § 6-11-20(b)(2)b., the definition of malice includes circumstances under which "the law will imply an evil intent." Therefore, because the jury was free to determine the disputed facts in this case, it could have concluded that Hunter acted with malice simply because she testified falsely at Barnett's preliminary hearing. If the jury concluded that Hunter knew that Barnett had resigned and that his keys were in the safe on the night before the burglary; that she, for some reason, did not share this information with her superiors and the police; and that she then testified falsely at Barnett's preliminary hearing, the jury could have concluded that all of these "facts" combined constituted clear and convincing evidence of malice toward Barnett.

VI. The Claims Against Shoney's
Barnett argues that Shoney's is liable for Hunter's actions.[3] Shoney's first argues that Hunter's actions were not within the line and scope of her duty or in furtherance of Shoney's business and that, therefore, it cannot be vicariously liable for Hunter's actions. Shoney's also argues that it did not ratify Hunter's conduct and that it therefore cannot be held directly liable.
"For [Shoney's] to become liable for [the] alleged intentional torts of its agent, [Barnett] must offer evidence that the agent's wrongful acts were in the line and scope of [her] employment; or that the acts were in furtherance of the business of [Shoney's]; or that [Shoney's] participated in, authorized, or ratified the wrongful acts."
Joyner v. AAA Cooper Transp., 477 So.2d 364, 365 (Ala.1985) (citations omitted); see also Potts v. BE & K Constr. Co., 604 So.2d 398, 400 (Ala.1992). As our supreme court stated in Potts, an employer's vicarious liability results when the tortious act of the employee was done for the employer's benefit by virtue of being performed in the line and scope of the employee's employment or performed for the furtherance of the employer's business. Potts, 604 So.2d at 400. The employer is directly liable when it either authorizes or participates in the employee's tortious conduct or when, after learning of the employee's conduct, it ratifies that conduct. Id.

A. Vicarious Liability
To hold Shoney's vicariously liable for Hunter's alleged malicious prosecution Barnett must prove that what Hunter did was in the line and scope of her employment or was in furtherance of Shoney's business. Certainly, as manager, Hunter was required to respond to a theft by going to the store and reporting the theft to her superiors. However, the true test of whether an employee is acting in the line and scope of her employment is not simply whether the employee was at work when the incident occurred.
A determination that an employee is acting within the line and scope of her employment is generally a question of fact to be decided by a jury. Chamlee v. Johnson-Rast & Hays, 579 So.2d 580, 583 (Ala.1990). The major focus of such a determination is whether the actions of the employee are "in promotion of the business of the employment." Chamlee, 579 So.2d at 582.
"[W]here an employee abandons [her] employer's business for personal reasons the employment is suspended.... [T]he conduct of the employee ... must not be impelled by motives that are wholly personal, or to gratify [her] own feelings or resentment...."
Id.
Because the facts in this case are disputed, whether Hunter was acting in the line *1028 and scope of her employment must be left to the jury. The malicious prosecution claim against Hunter is the only claim to be submitted to the jury on a retrial of this case. Therefore, Shoney's can be vicariously liable for Hunter's alleged malicious prosecution of Barnett only if her conduct was "not ... impelled by motives that are wholly personal, or to gratify [her] own feelings or resentment...." Id.

B. Direct Liability
Shoney's may be held liable for its own conduct if it participated in, authorized, or ratified Hunter's alleged wrongful conduct. Potts, 604 So.2d at 400. To prove that Shoney's "either expressly adopted ... or implicitly approved of [Hunter's conduct]," Barnett must show that Shoney's (1) had actual knowledge of Hunter's alleged tortious conduct; (2) knew or should have known that this conduct constituted a tort; and (3) armed with this knowledge, failed to take adequate steps to remedy the situation. Id. Nothing in the evidence presented at trial indicates that any of Hunter's superiors knew she was concealing material facts about Barnett's alleged resignation from them. Without actual knowledge of Hunter's deception, Shoney's could not have ratified her conduct. See Moman v. Gregerson's Foods, Inc., 570 So.2d 1215, 1216 (Ala. 1990).

VII. Shoney's Liability for Punitive Damages Under Ala.Code 1975, § 6-11-27
Alabama law provides that a principal is liable for punitive damages awarded as a result of acts of its agent that amount to intentional wrongful conduct or conduct involving malice only under certain circumstances. Ala.Code 1975, § 6-11-27(a). The provision reads as follows:
"A principal, employer, or other master shall not be liable for punitive damages for intentional wrongful conduct or conduct involving malice based upon acts or omissions of an agent, employee, or servant of said principal, employer, or master unless the principal, employer, or master either: (i) knew or should have known of the unfitness of the agent, employee, or servant, and employed him or continued to employ him, or used his services without proper instruction with a disregard of the rights or safety of others; or (ii) authorized the wrongful conduct; or (iii) ratified the wrongful conduct; or unless the acts of the agent, servant or employee were calculated to or did benefit the principal, employer or other master, except where the plaintiff knowingly participated with the agent, servant, or employee to commit fraud or wrongful conduct with full knowledge of the import of his act."
§ 6-11-27.
Barnett does not address the application of § 6-11-27 in his brief. He argues instead that Hunter's knowledge of his resignation and the knowledge that his keys had been placed in the safe must be imputed to Shoney's and that, therefore, Shoney's is liable for punitive damages. We disagree. The statute requires that Barnett prove that Shoney's either (1) knew or should have known of Hunter's incompetence but continued to employ her without proper instruction; (2) authorized the wrongful act; or (3) ratified the wrongful act; or that (4) Hunter's conduct was calculated to or did benefit Shoney's in some way. Barnett did not allege that Hunter was incompetent; he did not present evidence that Shoney's ratified or authorized Hunter's conduct; and he did not present evidence that Hunter's actions benefited Shoney's. Therefore, we conclude that, under § 6-11-27, Barnett is not entitled to recover punitive damages from Shoney's if on retrial it is determined that Hunter engaged in malicious prosecution.

VIII. The Exclusion of Barnett's Plea of Guilt to Sexual Abuse in the Second Degree
Shoney's and Hunter argue that the trial court erred by excluding evidence of Barnett's conviction of sexual misconduct *1029 in the second degree. They argue that the conviction is admissible under Rule 609(a)(2), Ala. R. Evid., to impeach Barnett's credibility and that it is also admissible to mitigate Barnett's claim for damages for mental anguish. Barnett argues that the conviction was properly excluded because, he says, it is not admissible under Rule 609(a)(2) or on the issue of damages. A trial court has wide discretion in determining the relevancy of evidence and whether to exclude or admit evidence. Floyd v. Macon County Comm'n, 707 So.2d 262, 262-63 (Ala.Civ. App.1997). After considering the Alabama Rules of Evidence and the purposes for which Barnett's conviction was offered, we conclude that Barnett's conviction was properly excluded.

A. Rule 609
Rule 609 states:
"(a) General Rule. For the purpose of attacking the credibility of a witness,
". . . .
"(2) evidence that any witness has been convicted of a crime shall be admitted if it involved dishonesty or false statement, regardless of the punishment."
Rule 609(a)(2) is modeled after the same rule in the Federal Rules of Evidence, and cases construing the federal rules are to be considered authority for this state's courts when construing the Alabama rules. Rule 102, Ala. R. Evid., Advisory Committee's Notes. Under the plain language of the rule, only a conviction involving dishonesty or a false statement is admissible for impeachment purposes. However, the "plain" language of the rule has been the subject of much debate in the federal circuits. Many federal circuits have held that the language of the rule is to be given a restricted meaning, thereby limiting the convictions admissible under the rule. See, e.g., United States v. Mejia-Alarcon, 995 F.2d 982 (10th Cir.), cert. denied, 510 U.S. 927, 114 S.Ct. 334, 126 L.Ed.2d 279 (1993); Cree v. Hatcher, 969 F.2d 34 (3d Cir.1992); United States v. Brackeen, 969 F.2d 827 (9th Cir.1992); and United States v. Smith, 551 F.2d 348 (D.C.Cir.1976). See also United States v. Farmer, 923 F.2d 1557 (11th Cir.1991) (holding that theft convictions are usually not admissible under Rule 609).[4]But see United States v. Gellman, 677 F.2d 65 (11th Cir.1982) (holding that a conviction for the failure to file an income tax return is admissible under Rule 609 because it is "sufficiently reprehensible to meet the exception of rule 609(a)(2)") and Zukowski v. Dunton, 650 F.2d 30 (4th Cir.1981) (same).
The federal cases that have narrowly interpreted "dishonesty" and "false statement" have pointed out the differences in the more liberal definition of those terms, which include a "breach of trust," a "`lack of fairness,'" and a "`disposition to ... betray,'" and the more restrictive definitions including "deceitful behavior" and a "`disposition to lie, cheat, or defraud.'" Brackeen, 969 F.2d at 829 (citation omitted). In construing the term "dishonesty" narrowly, the Brackeen court, like many of its counterparts, relied upon the legislative history of Rule 609(a)(2), Fed.R.Evid. Id. at 830. The House Conference Committee Report, quoted by the Brackeen court, stated:
"`By the phrase "dishonesty and false statement" the Conference means crimes such as perjury or subornation of perjury, false statement, criminal fraud, embezzlement, or false pretense, or any other offense in the nature of crimen falsi, the commission of which involves some element of deceit, untruthfulness, or falsification, bearing on the accused's propensity to testify truthfully.'"
*1030 Id. Therefore, the Brackeen court concluded that the drafters of the federal rule intended Rule 609(a)(2) "to apply only to those crimes that factually or by definition entail some element of misrepresentation or deceit, and not to `"those crimes which, bad though they are, do not carry with them a tinge of falsification."'" Id. at 831 (quoting United States v. Glenn, 667 F.2d 1269, 1273 (9th 1982) (quoting in turn United States v. Ortega, 561 F.2d 803, 806 (9th Cir.1977))).
The crime for which Barnett was convicted was sexual abuse in the second degree. See Ala.Code 1975, § 13A-6-67. That statute reads:
"(a) A person commits the crime of sexual abuse in the second degree if:
". . . .
"(2) He, being 19 years old or older, subjects another person to sexual contact who is less than 16 years old, but more than 12 years old."
§ 13A-6-67. None of the elements of the crime involve dishonesty or false statement. Therefore, the trial court did not err by excluding evidence of Barnett's conviction under Rule 609.

B. Relevance as to Damages
Shoney's and Hunter also argue that evidence of Barnett's conviction should have been admitted to mitigate the damages Barnett claimed for mental anguish suffered as a result of his incarceration.[5] Their argument appears to be that Barnett's conviction would tend to prove that Barnett could not have suffered mental anguish over his incarceration for 32 days on the burglary charge because he was later incarcerated for one day on the sexual abuse charge. However, Barnett was not arrested on the charge of sexual abuse until February 1996, nine months after his arrest and incarceration on the burglary charge. The trial court apparently did not see the relevance of the conviction in mitigating damages; it pointed out that it had found no Alabama cases allowing a later conviction to be used to mitigate damages. We also fail to see the relevance of a later incarceration or conviction; it does not tend to show that Barnett did not suffer mental anguish from being placed in jail before for a burglary he did not commit. See Rule 401, Ala. R. Evid.[6] Therefore, we affirm the trial court's exclusion of Barnett's conviction.

Pretermission of Other Issues
Shoney's, Hunter, and Barnett raise other issues that, in light of our decision to reverse the judgment and remand the case under King Mines Resort, Inc. v. Malachi Mining & Minerals, Inc., 518 So.2d 714, 716 (Ala.1987), we need not address. Therefore, we will not address the allegations of juror misconduct, the excessiveness of the damages award, or the propriety of the remittitur.

Conclusion
Because Barnett failed to present sufficient evidence of the elements of the tort of abuse of process, and because the jury returned a general verdict, we must reverse the judgment of the trial court and remand this cause for a new trial on the malicious prosecution claim. See King Mines Resort, Inc., 518 So.2d at 716.
OPINION OF DECEMBER 11, 1998, WITHDRAWN; OPINION SUBSTITUTED; APPLICATIONS OVERRULED; RULE 39(k) MOTIONS DENIED; REVERSED AND REMANDED.
ROBERTSON, P.J., and YATES, J., concur specially.
*1031 THOMPSON, J., concurs in the result.
MONROE, J., dissents.
YATES, Judge, concurring specially.
I concur in the denial of the rehearing applications. I write specially to note that I agree with that portion of Judge Monroe's dissent wherein he states that Judge Crawley's opinion should not be read to bar in all cases a recovery of punitive damages from a principal based on the acts of his agent. A principal may be liable for punitive damages if (1) he either knew or should have known of the agent's incompetence but continued to employ the agent without proper instruction; (2) he authorized the agent's wrongful act; (3) he ratified the wrongful act; or (4) the agent's conduct was calculated to, or did, benefit the principal in some way. § 6-11-27, Ala. Code 1975; Potts v. BE & K Constr. Co., 604 So.2d 398, 400 (Ala.1992). However, under the specific facts of this case, I must conclude that Barnett failed to prove any of these requirements.
ROBERTSON, P.J., concurs.
MONROE, J., dissenting.
Because I would affirm the judgment of the trial court, I must respectfully dissent. I believe that in this case the abuse-of-process claim is encompassed within the malicious-prosecution claim, so that sending the case to the jury on the issue of abuse of process was merely superfluous. See, C.C. & J., Inc. v. Hagood, 711 So.2d 947, 951 (Ala.1998) ("any question about the initiation of a judicial proceeding is encompassed in a malicious prosecution claim, not an abuse-of-process claim"). That being the case, if there was any error in sending the abuse-of-process claim to the jury, it was harmless error and does not require reversal. Rule 45, Ala. R.App. P.
Furthermore, I would like to make it clear that even though a majority of this court has determined that the claim alleging abuse of process should not have gone to the jury, Judge Crawley's opinion does not stand for the proposition that a principal cannot be held liable for punitive damages based on the acts of its agent. A plaintiff may recover punitive damages from the principal based on the acts of the agent provided the plaintiff proves that the principal either knew or should have known of the agent's incompetence but continued to employ the agent without proper instruction; that the principal authorized the wrongful act or ratified the wrongful act; or that the agent's conduct was intended to, or did, benefit the principal. We found only that Barnett failed to show any of those requirements as regards the abuse-of-process claim, and, therefore, he could not recover from Shoney's on that claim.
NOTES
[1] TPI, Inc., was bought out by Shoney's, Inc., in September 1996. For ease of reading, we will refer to TPI, Inc., and Shoney's, Inc., collectively as "Shoney's."
[2] Neither an acquittal nor a decision to nolpros the case creates an inference that probable cause was lacking. Neighbors, 402 So.2d at 962.
[3] Because we have determined that Hunter was entitled to a judgment as a matter of law on the abuse of process claim and that claim will not be submitted to a jury on the retrial of this case, Shoney's can be liable, if at all, only for Hunter's alleged malicious prosecution of Barnett.
[4] However, the Alabama Court of Criminal Appeals has stated that it will use a broader interpretation of the term "dishonesty," under the new rules of evidence, apparently to include evidence of the convictions previously allowed for impeachment purposes under the former "moral turpitude" rule. Huffman v. State, 706 So.2d 808 (Ala.Crim.App.1997).
[5] Shoney's and Barnett also argue that evidence of the conviction was admissible to counter Barnett's claim of slander; however, Barnett withdrew that claim at trial.
[6] Rule 401 reads: "`Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence."