PITTMAN, Judge.
Latonya Myles appeals from a summary judgment entered by the Houston Circuit Court in favor of Screentech, Inc., Terry Collins, and Randall Williams (hereinafter referred to collectively as “the Screentech defendants”).
In November 2010, Myles filed a lawsuit asserting claims of abuse of process, malicious prosecution, false imprisonment, and the tort of outrage against Screentech, Inc. Screentech answered Myles’s complaint in December 2010. In February 2011, Myles filed an amended complaint naming Collins and Williams as additional defendants and asserting the same claims against them that she had asserted against Screentech. In May 2011, the Screentech defendants filed a motion for a summary judgment, to which Myles responded in opposition. Following a hearing on that motion, the trial court entered a summary judgment as to all claims in favor of the Screentech defendants.
The record reveals the following facts. Screentech is a screen-printing business owned by Collins and Williams. In January 2009, Myles entered into a business relationship with Screentech. At that time, Myles stated, she operated a nonprofit organization called “Milk and Honey Multicultural” and placed an order for 1,000 t-shirts that the organization planned to sell at the presidential inauguration. The order totaled $4,000. Upon placing the order, Myles stated that she would not be able to pay the entire balance owed, but she asked if she could pay a portion of that balance and receive 100 t-shirts to sell at an event before the time she needed all 1,000 t-shirts. The next day, Myles went to Screentech’s place of business and paid a $300 deposit and gave Screentech the artwork for the t-shirts. The parties did not enter into a written contract at that time; however, Myles provided a post office box number, a telephone number, and a federal tax-identification number for the organization. Myles also provided a physical address for the organization. Approximately one week later, Myles picked up the first 100 t-shirts she had requested; however, Screentech had gone ahead and issued 300 t-shirts to her, leaving 700 t-shirts to complete the order. Two days after picking up the 300 t-shirts, Myles picked up 1,000 t-shirts; Myles claimed that she had telephoned Screentech when she realized that she had initially picked up 300 t-shirts, rather than 100 t-shirts, and that Screentech had agreed to give her the 300 t-shirts for free, making her outstanding balance at that point $3,700.
*565 On the other hand, Screentech treated the additional 1,000 shirts as a second order.
As of April 1, 2009, the organization had an outstanding balance of $4,056 with Screentech, and, after the account was 90 days overdue, Screentech began attempting to contact Myles and the organization at the telephone number and addresses Myles had previously provided. Neither Myles nor any other representative of the organization responded to any of Screen-tech’s attempts to contact them, not even to a certified letter that was confirmed to have been delivered to the physical address provided by Myles. All communication sent to the organization at that time informed it that its account was in default.
Because its attempts to contact Myles and/or the organization had been unsuccessful, Collins instructed a Screentech employee to perform an Internet search regarding the organization to see if they could retrieve additional information regarding the organization or, possibly, about a representative of the organization other than Myles. The search produced information about another nonprofit organization, also named Milk and Honey, headquartered in Florida. Believing that organization to be the same organization as Myles’s, Screentech contacted that organization and was told that Myles was not employed there. Thereafter, Collins contacted the Houston County District Attorney’s Office and informed the district attorney that Screentech had not been able to locate correct contact information on its customer, who had claimed to be a nonprofit organization. The district attorney advised Collins to file a police report, which he did.
Screentech filed a police report on April 22, 2009. At that time, Screentech gave investigators its file on the “Milk and Honey Multicultural” account and a copy of a letter it had sent Myles questioning the status of her organization. In summary, it is undisputed that Screentech told investigators that Myles had not paid for the t-shirts she had ordered on behalf of an organization called “Milk and Honey Multicultural,” which she claimed was a nonprofit organization; that Screentech had received no response from its attempts to contact Myles with the contact information she had provided; that Screentech had searched for additional contact information and, in doing so, had located an entity also named “Milk and Honey” in Pensacola, which had informed Screentech that Myles was not employed by that entity; and that there was no agreement with Myles to pay for the t-shirts at a later date. An independent investigation of Myles subsequently revealed that she had previously used approximately six different aliases, two different Social Security numbers, and had given multiple addresses as her own.
Myles was charged with and convicted of first-degree theft of property on December 10, 2009. Williams testified during that trial regarding his dealings with Myles. That conviction was thereafter set aside in April 2010. Myles was again indicted for first-degree theft. Screentech took no part in that investigation or trial. The case was eventually settled with the district attorney’s office.
On appeal, Myles asserts that the trial court erred in entering a summary judgment in favor of the Screentech defendants because, she asserts, genuine issues of material fact exist regarding her claims of abuse of process, malicious prosecution, false imprisonment, and the tort of outrage.
It is well settled that an appellate court reviews a summary judgment de novo, using the same standard applied by the trial court. Neal v. Sem Ray, Inc., 68 So.3d 194, 196 (Ala.Civ.App.2011). Under Rule 56(c), Ala. R. Civ. P., we must review the *566 evidence to determine whether the movant established that no genuine issue of material fact existed, thereby entitling the mov-ant to a judgment as a matter of law. If the movant makes that showing, the non-movant thereafter bears the burden to adduce “substantial evidence” to rebut the movant’s contention that there is no genuine issue of material fact. Bass v. South-Trust Bank of Baldwin Cnty., 538 So.2d 794, 797-98 (Ala.1989). “[Sjubstantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989). We apply the de novo standard of review to each issue raised in the present appeal.
We begin by discussing Myles’s claim of abuse of process. To establish a prima facie case of abuse of process, the evidence must show that an ulterior purpose motivated the use of process, that the use of process was wrongful, and that the defendant acted with malice. Moon v. Pillion, 2 So.3d 842, 846 (Ala.2008). Myles contends that the evidence she presented is sufficient to establish a prima facie case as to her abuse-of-process claim. First, she argues that Screentech was improperly motivated to initiate Myles’s prosecution by its desire to collect the debt owed to it, which, she claims, was its ulterior purpose. In support of her argument, Myles relies on Shoney’s, Inc. v. Barnett, 773 So.2d 1015 (Ala.Civ.App.1999), in which we explained:
“Abuse of process has been defined as ‘the malicious perversion of a regularly issued process to accomplish a purpose whereby a result not lawfully or properly obtainable under it is secured.’ Duncan v. Kent, 370 So.2d 288, 290 (Ala.1979). As our supreme court has explained, a defendant cannot be liable for the tort of abuse of process [1] “[i]f the action is confined to its regular and legitimate function in relation to the cause of action stated in the complaint.” ’ Duncan, 370 So.2d at 290 (quoting 1 Am.Jur.2d Abuse of Process, § 13 (1962)). However, liability attaches ‘ “if the suit is brought, not to recover on the cause of action stated in the complaint, but for a collateral purpose.” ’ Id.”
Shoney’s, 773 So.2d at 1025.
In particular, in her brief, Myles points to our reference in Shoney’s, used for illustrative purposes, to a debt-collection scenario where a potentially viable abuse-of-process claim might arise, stating that anyone who initiates prosecution to collect a debt abuses process. However, in Sho-ney’s, we stated that it would be an abuse of process for a creditor to garnish (thereby, use the judicial process) a debtor’s exempt wages in order to coerce the debt- or into paying his or her balance. We thereafter summarized that “ ‘if a defendant prosecutes an innocent plaintiff for a crime without reasonable grounds to believe him guilty, it is malicious prosecution; if he prosecutes him with such grounds to extort payment of a debt, it is abuse of process.’ ” Shoney’s, 773 So.2d at 1025 (quoting William L. Prosser, Handbook of the Law of Torts, § 121, at 857 (4th ed.1971)).[1]
We reject Myles’s argument that the fact that Screentech wanted to collect a debt from Myles satisfied the ulterior-purpose element of the tort of abuse of *567 process. Screentech went to the authorities after it was unable to contact Myles with the contact information she had provided. Upon learning about an organization with a similar name as Myles’s organization and being told that it was not affiliated in any way with Myles, Screen-tech became skeptical and raised its concerns to the authorities. Although Screentech wanted to collect its debt, it was legitimately concerned that Myles’s suspected unlawful behavior would prevent it from achieving that end; Screen-tech, thus, went to the authorities to report its suspicions of Myles’s unlawful behavior. The situation presented here is not one in which Screentech chose to utilize the authorities to collect its debt without reasonably believing that Myles had committed a crime.[2]
Additionally, Myles argues that Screen-tech’s statement that it was not a part of the second grand-jury proceedings initiated with regard to Myles because it had been paid by that point is evidence indicating that Screentech “knew that a crime had not been committed.” The fact that Screentech felt unconnected, even indifferent, to the second round of criminal proceedings against Myles does not speak to whether it was genuinely suspicious of potentially unlawful behavior when the police report was filed. Moreover, Myles contends that the fact that Screentech treated her as it customarily does its other customers demonstrates that Screentech went to the authorities after its traditional collection methods had failed. That is precisely what Screentech claimed to have done, but Myles’s argument ignores the undisputed fact that Screentech had been unsuccessful in its collection efforts because it had either been given incorrect contact information or was being ignored by Myles. That fact, coupled with the undisputed fact that Screentech learned about another nonprofit organization with a similar name as Myles’s organization and was informed that Myles was not affiliated with that entity, gave the Screentech defendants a reasonable basis to be concerned that illegal activity may have occurred such that they would be prevented altogether from collecting the debt owed to Screentech. They did not resort to legal process after their traditional collection processes had failed (as is contended by Myles); rather, they approached the authorities once they became concerned that they had been the victims of fraud, rendering their traditional collection methods ineffective.
Myles argues that she presented sufficient evidence to establish wrongful use of process by presenting evidence of the information Screentech retrieved on the Pensacola organization with a similar name as Myles’s organization. Myles argues that, because she had .given Screen-tech correct contact information that was different from the contact information listed for the Pensacola organization, the Screentech defendants knew that the Pensacola organization was a separate entity; she asserts that their representation to *568 authorities that they were concerned about the propriety of the representations Myles had made to them about her business, in part, because the Pensacola organization had said Myles was not affiliated with them, fraudulently aided the government in obtaining an indictment. We reject this argument. Although the contact information that Myles gave Screentech may have been accurate, Screentech was unsuccessful in contacting Myles through those means. Even if Screentech did not believe Myles had abandoned those locations and telephone numbers, Screentech had no reason to immediately dismiss the information it had discounted about the Pensacola organization and Myles’s nonaffiliation with that organization. Unfortunately, businesses have been defrauded by purported entities operating without authorization under the name of a real business entity; at the time Screentech contacted the Pensacola organization, it had no reason to give credence to the contact information provided by Myles because that information had not enabled Screentech to contact her. The fact that the information retrieved as a result of the Internet search regarding the' Pensacola organization, which information caused Screentech to become concerned that it had been defrauded, differed from the contact information Myles had previously provided Screentech does not support the assertion that the Screentech defendants fraudulently aided the prosecution of Myles’s. Because the record does not reveal evidence indicative of wrongful use of process, we conclude that Myles did not present evidence sufficient to make a prima facie showing of the elements of abuse of process.
Next, Myles argues that she presented evidence sufficient to establish a claim of malicious prosecution. To successfully make a prima facie case of malicious prosecution, it is necessary for the claimant to present substantial evidence indicating that the opposing party lacked probable cause. Favorite Market Store v. Waldrop, 924 So.2d 719, 722 (Ala.Civ.App.2005). Probable cause ‘“as the term is employed in actions for malicious prosecution is such a state of facts in the mind of the prosecutor that would lead a man of ordinary caution or prudence to believe or entertain an honest or strong suspicion that the person arrested is guilty.’ ” Harris v. Harris, 542 So.2d 284, 286 (Ala.Civ.App.1989) (quoting National Sec. Fire & Casualty Co. v. Bowen, 447 So.2d 133, 139 (Ala.1983)).
Although the issue of probable cause should be heard by a jury when material facts are in dispute, Harris, 542 So.2d at 286, the material facts are not in dispute here. Myles asserts that Screen-tech did not have reason to believe that it had been defrauded by Myles because it “recognized” that the Pensacola organization was unrelated to Myles yet filed a criminal complaint anyway. In support of that statement, Myles refers to the cross-examination of Collins during his deposition, where he was asked about the listing that had been retrieved regarding the Pensacola organization. Collins did not testify during this deposition that he was aware that the Pensacola organization was unrelated to Myles’s organization; Myles’s statement is, thus, without merit.
According to Myles, the only reason that Screentech went to the authorities was because it wanted to collect a debt. Again, Myles fails to consider that the undisputed facts of this case show that Screentech not only wanted to collect a debt, but that it also felt as though it was being deceived because Myles had not responded to any of its correspondence, giving Screentech no reason to believe that Myles could be located and was willing to pay the debt owed *569 to Screentech. Even if, as Myles argues, Screentech did not run a search of the tax-identification number that Myles had provided, Screentech’s failure to do so does not translate into knowledge that “Milk and Honey Multicultural” was different from the organization in Pensacola; it does not lessen the evidence indicating that Screentech was suspicious that it had been defrauded. Myles further asserts that Screentech lacked probable cause based on its familiarity with using civil process to collect on a debt. Specifically, Myles points to the fact that Screentech had other delinquent accounts at the time it initiated the criminal process in this matter. Again, Myles’s argument fails; the fact that initiating criminal proceedings was something Screentech had never done before weakens Myles’s argument that Screentech resorted to the criminal process simply because using civil process to collect the debt had fail. Myles does not account for the reasons why the traditional process of collecting a debt had failed Screentech and the reasonable inferences Screentech was led to as a result of Myles’s failure to respond to its collection efforts. Because substantial evidence of a lack of probable cause was not presented, a prima facie case of malicious prosecution was not established.
Next, we address Myles’s claim of false imprisonment. Under Ala.Code 1975, § 6-5-170, false imprisonment is the unlawful detention of someone wherein that person is deprived of personal liberty. A person who reports a suspicion that another person may be guilty of a crime cannot be liable for false imprisonment unless that person has acted in bad faith, without “ ‘reasonable cause to believe’ ” that the accused is guilty of the crime. Crown Cent. Petroleum Corp. v. Williams, 679 So.2d 651, 655 (Ala.1996) (quoting Caldwell v. Standard Oil Co., 220 Ala. 227, 229, 124 So. 512, 513 (1929)). For the same reasons that Myles did not establish a prima facie case that Screentech lacked probable cause to file a criminal complaint against Myles, Myles has failed to produce substantial evidence indicating that Screentech acted in bad faith and without a reasonable belief that Myles had committed a crime.
Finally, we address Myles’s assertion that she presented substantial evidence to support a claim of the tort of outrage. For Myles to be correct, she must have demonstrated that Screentech’s actions were “so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society.” American Road Serv. Co. v. Inmon, 394 So.2d 361, 365 (Ala.1980). Nevertheless, if probable cause is demonstrated, “[o]ne cannot be held liable where he has done no more than insist upon his legal rights in a permissible way.” McDuff v. Turner, 679 So.2d 1071, 1075 (Ala.Civ.App.1996). As we have discussed, the Screentech defendants had probable cause to file a criminal complaint against Myles, and, thus, its having done so cannot serve as a basis to hold them liable for the tort of outrage.
Because Myles did not present substantial evidence to establish a prima facie case as to her claims, the trial court did not err in entering a summary judgment in favor of the Screentech defendants.
AFFIRMED.
THOMPSON, P.J., and BRYAN, THOMAS, and MOORE, JJ., concur.

. In her brief, Myles presented her argument as follows: "The Shoney’s court stated that if a defendant prosecutes someone ‘with such grounds to extort payment of a debt it is abuse of process.' [Shoney’s, 773 So.2d] at 1025.” Myles has use of the quoted language out of context, and, thus, her assertion is an incorrect statement of law.

. Although she does not assert this argument in her brief, Myles avers in her statement of facts that the Screentech defendants reported their suspicions regarding Myles even though they knew, at that time, that the organization in Pensacola was not the same organization Myles had claimed to represent. As evidence supporting that contention, Myles references two Internet database searches identifying "Milk and Honey Multicultural” as a legitimate nonprofit organization. That evidence in no way translates into evidence that Screentech had received confirmation that "Milk and Honey Multicultural” was legitimate, much less evidence that Screentech had no reason to believe it was being deceived by Myles; the contact information it had received from Myles had, at that point, not assisted Screentech in contacting Myles or the organization that she purported to represent.